**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: BRYAN CAVE LEIGHTON PAISNER, LLP DATA BREACH LITIGATION<br><br>This Document Relates to: All Actions | Master File No. 1:23-CV-04249<br><br>**JURY TRIAL DEMANDED** |

<u>**CONSOLIDATED CLASS ACTION COMPLAINT**</u>

Plaintiffs Eric D. Flores and Rock Meyer (collectively, "Plaintiffs") bring this class action lawsuit on behalf of themselves, and on behalf of all others similarly situated (the "Class" or "Class Members") against Defendant, Bryan Cave Leighton Paisner LLP ("BCLP" or "Defendant"), and allege as follows:

## I.   <u>INTRODUCTION</u>

1.      This lawsuit stems from a massive and preventable data breach spanning from February 23, 2023, through March 1, 2023, during which cybercriminals infiltrated BCLP's inadequately protected data systems and **acquired** the highly sensitive personally identifiable information ("PII") of approximately **51,110 individuals** (the "Data Breach" or "Breach"). As a result of BCLP's negligence and failure to provide adequate data security, Plaintiffs' and the Class's PII is in the hands of cybercriminals who will misuse their PII for nefarious purposes for years to come.

2.      According to BCLP, on February 27, 2023, BCLP "detected unauthorized

access to its systems, including an area it used to store certain customer files."[1]

3.      Despite discovering the unauthorized access to its systems on February 27, 2023, BCLP allowed the Data Breach to continue for days—until March 1, 2023.[2]

4.      Although BCLP discovered the Data Breach on February 27, 2023, the Data Breach actually began February 23, 2023.[3] Thus, the Data Breach spanned at least six (6) days.

5.      In other words, cybercriminals had unfettered access to Plaintiffs' and the Class's highly sensitive PII for nearly an entire week.

6.      There is no question that sensitive PII was stolen in the Data Breach. Indeed, BCLP admits point-blank that Plaintiffs' and the Class's Private Information is in the hands of cybercriminals. Following an investigation, BCLP confirmed an unauthorized third-party "**acquired certain data**," including but not limited to PII such as: names, marital statuses, Social Security numbers, addresses, dates of birth, genders, employee identification numbers, and retirement and/or thrift plan information (the "Private Information" or "Personal Information").[4]

7.      On or about June 15, 2023—almost four (4) months after the unauthorized

---

[1] *See* Exhibits 1–2 (Notice of Data Breach Letters).

[2] *See id.*

[3] *See id.*

[4] *See id.*

party first gained access to Plaintiffs' and the Class's PII—victims of the Data Breach were finally notified via letter that their highly sensitive and confidential PII was exposed ("Notice of Data Breach Letter" or "Notice Letter"). [5]

8.      The Notice Letter obscured the nature of the breach and the threat it posed—failing to notify Plaintiffs and the Class how many people were impacted, how the Breach happened, why it took BCLP so long to discover the Breach, and why there was such a delay in notifying victims of the Breach.

9.      Defendant's failure to timely detect and report the Data Breach made the victims vulnerable to identity theft without any warning to monitor their credit reports to prevent unauthorized use of their PII.

10.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

11.     In failing to adequately protect Plaintiffs' and the Class's PII, failing to adequately notify Plaintiffs and the Class of the Breach, failing to use up-to-date data security practices/infrastructure to prevent the Data Breach, and by obscuring the nature of the Breach, Defendant violated state and federal laws and harmed Plaintiffs and the Class.

12.     Plaintiffs and members of the Class are victims of Defendant's negligence

---

[5] *See id.*

and inadequate cyber security measures and are victims of Defendant's Data Breach.

13. Accordingly, Plaintiffs, on behalf of themselves and on behalf of a class of similarly situated individuals, bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees.

## II. THE PARTIES

14. Plaintiff **Rock Meyer** ("Plaintiff Meyer") is a natural person and citizen of the State of Kentucky, where he intends to remain. Plaintiff Meyer is a Data Breach victim and received a Notice of Data Breach Letter.[6]

15. Plaintiff **Eric D. Flores** ("Plaintiff Flores") is a natural person and citizen of the State of California, where he intends to remain. Plaintiff Flores is a Data Breach victim and received a Notice of Data Breach Letter.[7]

16. Defendant, **BCLP**, is registered in the State of Illinois as a foreign LLP. BCLP has multiple partners in the State of Illinois and within this District.[8]

## III. JURISDICTION & VENUE

17. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100

---

[6] *See* Exhibit 1.

[7] *See* Exhibit 2.

[8] *See generally*, People (Chicago), BRYAN CAVE LEIGHTON PAISNER LLP, https://www.bclplaw.com/en-US/people/index.html?of=2169 (last visited Oct. 19, 2023).

members in the proposed class,[9] and Plaintiffs and Defendant are citizens of different states.

18.     This Court has personal jurisdiction over the Defendant because Defendant does substantial business in this District, has partners located in the District, has an office located in this District, and is registered to do business in the State of Illinois.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## IV.     FACTUAL ALLEGATIONS

### Bryan Cave Leighton Paisner LLP's Business and the Collection of Plaintiffs' and the Class's Private Information

20.     BCLP is a law firm that touts itself as "groundbreakers and innovators"[10] who have "extensive experience handling the full scope of complex privacy and security issues."[11]

---

[9] *See* Data Breach Notification, OFFICE OF THE MAINE ATTORNEY GENERAL, https://apps.web.maine.gov/online/aeviewer/ME/40/ca25f29f-db60-4baf-ba53-8bae79da4d97.shtml (last visited Oct. 19, 2023) (reporting 51,110 individuals were affected by the Data Breach).

[10] About us, BRYAN CAVE LEIGHTON PAISNER LLP, https://www.bclplaw.com/en-US/about/about-bclp.html (last visited Oct. 19, 2023).

[11] Data Privacy & Security, BRYAN CAVE LEIGHTON PAISNER LLP, https://www.bclplaw.com/en-US/practices/corporate/data-privacy-and-security-team/index.html (last visited Oct. 19, 2023).

21.     BCLP boasts a total annual revenue of $900 million in 2022.[12] As such, BCLP had more than sufficient funds to implement adequate data security, infrastructure, training, procedures, and protocols.

22.     BCLP's services are specialized for companies "including 35% of the Fortune 500"[13] who manage highly sensitive data. As such, BCLP is routinely entrusted with PII from its clients, which BCLP must oversee, manage, and protect.

23.     Indeed, BCLP advertises that it "routinely advise[s] clients in a variety of sectors, including hospitality, consumer services, healthcare, software and technology, financial services, travel, manufacturing, and retail" about how "to achieve the most streamlined international data privacy strategy as possible, and [it] excel[s] at helping companies achieve their business goals while balancing and addressing privacy and security obligations."[14]

24.     Plaintiffs', and the Class's PII was acquired by BCLP through BCLP's relationship with one of BCLP's clients, Mondelez International ("Mondelez"). [15]

---

[12] BCLP Revenue, ZIPPIA, https://www.zippia.com/bryan-cave-careers-17522/revenue/ (last visited Oct. 19, 2023).

[13] About us, BRYAN CAVE LEIGHTON PAISNER LLP, https://www.bclplaw.com/en-US/about/about-bclp.html (last visited Oct. 19, 2023).

[14] Data Privacy & Security, BRYAN CAVE LEIGHTON PAISNER LLP, https://www.bclplaw.com/en-US/practices/corporate/data-privacy-and-security-team/index.html (last visited Oct. 19, 2023).

[15] *See* Exhibits 1–2.

Mondelez retained the legal services of BCLP. [16] As one of Mondelez's legal services providers, Bryan Cave had copies of and access to sensitive Private Information belonging to current and former Mondelez employees, including that of Plaintiffs and the Class. [17] [18]

25.     Defendant collected and maintained Plaintiffs' and the Class's PII in its computer systems. In collecting and maintaining Plaintiffs' and the Class's PII, Defendant implicitly agreed that it would protect and safeguard that PII by complying with state and federal laws and regulations and applicable industry standards.

26.     Indeed, Defendant states on its website, "[w]e understand the importance of keeping your Personal Information secure." [19]


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[16] "Mondelez Global LLC retained the legal services of the law firm Bryan Cave Leighton Paisner LLP ("Bryan Cave") to provide advice on customary legal matter of a company of its size. To provide these services, Bryan Cave obtained some PII of current and former Mondelez employees." Exhibits 1–2.

[17] *See id.*

[18] According to the Notice Letter, the Data Breach did not affect Mondelez's systems or networks. *See id.*

[19] Privacy Notice, BRYAN CAVE LEIGHTON PAISNER LLP, https://www.bclplaw.com/en-US/legal-notices/privacy-notice.html (last visited Oct. 19, 2023).

27.     In working with highly sensitive PII, BCLP assures that it "understand[s] the importance of keeping your PII secure,"[20] gloating that it employs a plethora of ways to ensure the security of PII:

> The use of: (a) firewalls, encryption, filtering, vulnerability scanning tools and periodic penetration tests; (b) physical and technical controls on, and monitoring of, access to our premises and systems; and (c) Business Continuity and Disaster Recovery Plans.
>
> We only engage reputable suppliers. We undertake appropriate information security and regulatory compliance due diligence on them and enter into appropriate contractual terms.
>
> We have internal compliance policies and provide appropriate data privacy and information security training.
>
> Where your Personal Information is transferred to other countries, we will put appropriate safeguards in place to ensure the lawfulness and security of the transfer. For example, all transfers of Personal Information to our offices outside of the EEA/UK are based on the EU Commission's standard contractual clauses. We will also put such arrangements in place with third parties as appropriate. Where required under applicable local law, we will seek your consent to the transfer.
>
> We keep these arrangements under regular review, taking into account security and compliance best practices, current risks, threats, vulnerabilities, mitigating controls, technology, and changes in applicable legal requirements.

28.     BCLP also claims that it has "a world class incident response practice that has helped clients navigate major security incidents and data breaches, including ransomware attacks," stating that it "leverage[s] that experience to help companies identify and remediate gaps in their readiness and to train companies how to respond to breaches effectively."[21]

---

[20] *Id.*

[21]  Data    Privacy    &    Security,    BRYAN    CAVE    LEIGHTON    PAISNER    LLP,

29.     BCLP promises that, in the event of a data breach, it will "inform you of this without undue delay."[22]

> If a data breach (leading to the destruction, loss, alteration, unauthorized disclosure of, or access to, your Personal Information) occurs which is likely to result in a high risk of adversely affecting your rights and freedoms, we will inform you of this without undue delay.

30.     As a self-proclaimed "leader" in data Privacy and Security firm and handling highly sensitive aspects of its clients' business, BCLP understood the need to protect Plaintiffs' and the Class's PII and the need to prioritize data security.

31.     In fact, BCLP advertises that its "experience and practical approach to data breach response uniquely equip us to assist organizations by understanding both the law and the business implications of data breaches."[23]

32.     Despite the promises explicitly and implicitly made by BCLP, BCLP failed to employ industry standard data security that would have prevented the Data Breach and the subsequent theft of Plaintiffs' and the Class's PII.

***BCLP's Massive and Preventable Data Breach***

33.     Between February 23, 2023, and March 1, 2023, BCLP, a law firm who claims to have "extensive experience handling the full scope of complex privacy and

---

https://www.bclplaw.com/en-US/practices/corporate/data-privacy-and-security-team/index.html (last visited Oct. 19, 2023).

[22] *Id.*

[23] *Id.*

security issues," and who also claims to "understand the importance of keeping [] personal information secure" failed to adequately secure and protect the Private Information of Plaintiffs and the Class, resulting in a massive and preventable data breach, reported to have affected at least 51,110 individuals.

34.     According to BCLP, on February 27, 2023, BCLP first detected unauthorized access to its systems, including an area that stored the Private Information of Plaintiffs and the Class.[24]

35.     Although the Breach was discovered by BCLP on February 27, 2023, the Data Breach actually began days earlier on February 23, 2023.[25]

36.     BCLP failed to timely detect the Data Breach, giving cybercriminals several days of unfettered access to Plaintiffs' and the Class's PII.

37.     To make matters worse, following an investigation, BCLP discovered the Data Breach spanned from February 23, 2023, through March 1, 2023—nearly an entire week.[26]

38.     In other words, BCLP's investigation revealed that not only had its network been hacked by cybercriminals at least four (4) days before it discovered the Breach, but the Data Breach actually continued for at least another two (2) days after BCLP first became

---

[24] *See* Exhibits 1–2.

[25] *See id.*

[26] *See id.*

aware of the intrusion.

39.    Despite BCLP self-proclaiming itself as a "leader" in data privacy and security, BCLP's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of highly sensitive PII, including the PII of Plaintiffs and the Class.

40.    BCLP's investigation revealed that during the Data Breach, the unauthorized third-party "**acquired certain data**," of Plaintiffs and the Class, including Social Security numbers, first and last names, addresses, dates of birth, marital statuses, genders, employee identification numbers, and Mondelez retirement and/or thrift plan information.[27]

41.    Based on this information from BCLP, Plaintiffs' and the Class's Private Information was **stolen** by cybercriminals in the Data Breach.

42.    Nearly four (4) months after the Breach began, victims were finally notified of the Data Breach via Notice of Data Breach Letters.[28]

43.    This belated notice is despite BCLP's public assertion in its privacy policy that "[i]f a data breach (leading to the destruction, loss, alteration, unauthorized disclosure of, or access to, your personal information) occurs which is likely to result in a high risk of adversely affecting your rights and freedoms, we will inform you of this without undue delay."[29]

---

[27] *See id.* (emphasis added).

[28] *See id.*

[29] Privacy Notice, BRYAN CAVE LEIGHTON PAISNER LLP, https://www.bclplaw.com/en-

44.    Despite BCLP's duties and alleged commitments to safeguard PII, BCLP did not follow industry standard practices in securing Plaintiffs' and the Class's Private Information, as evidenced by the Data Breach.

45.    In response to the Data Breach, BCLP contends it has "taken steps to address the incident and prevent a similar occurrence in the future."[30] Although BCLP failed to expand on what these alleged "steps" are, such steps should have been in place *before* the Data Breach.

46.    Through the Notice of Data Breach Letter, Defendant also recognized the actual imminent harm and injury flowing from the Data Breach and admonished victims of the Data Breach to "remain vigilant by reviewing account statements and monitoring free credit reports."[31] The Notice of Data Breach Letter also advised victims to "change your passwords" and that they may want to temporarily freeze their credit.[32]

47.    Even though highly sensitive information such as Social Security numbers were accessed here, cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity theft, fraud, or misuse Plaintiffs' and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data

---

US/legal-notices/privacy-notice.html (last visited Oct. 19, 2023).

[30] Exhibits 1–2.

[31] *Id.*

[32] *Id.*

Breach and combine it with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

48.    Although the Notice Letter claims financial information was not exposed in the Breach, cybercriminals need not harvest a person's financial account information in order to gain access to pre-existing financial accounts. Cybercriminals can use an individual's Social Security Number, which was exposed here, to access and drain existing financial accounts.[33]

49.    Plaintiffs and the Class were only offered two (2) years of complimentary credit monitoring services, which *does not* adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the Breach involves PII that cannot be easily changed, such as Social Security numbers and information that cannot be changed, such as dates of birth. The Breach exposed nonpublic, highly private information, which is disturbing harm in and of itself and an utter invasion of privacy.

---

[33] *See* https://www.gobankingrates.com/retirement/social-security/what-hackers-can-do-with-ssn/ ("Armed with your SSN, hackers could access your bank accounts," says O'Brien. "They could pose as you to customer support, perform fraudulent transactions, transfer funds, or drain your accounts."); *see also* https://surfshark.com/blog/what-can-someone-do-with-your-ssn ("An identity thief can use your SSN together with your PII to open new bank accounts or access existing ones, take out credit cards, and apply for loans all in your name."); https://www.moneytalksnews.com/slideshows/heres-what-hackers-can-do-with-your-social-security-number/ ("A criminal with your Social Security number and other data about you could potentially gain access to your existing bank, credit card, loan and other accounts."); https://www.washingtonpost.com/creativegroup/discover/is-your-social-security-number-at-risk/ ("The financial cost of a compromised Social Security number can be profound. If someone gets a hold of your Social Security number, 'they can make unauthorized withdrawals, purchases, and transfers. They can get government documents.'").

50.     Defendant acknowledged the imminent future risk of harm to Plaintiffs and the Class by offering complimentary credit monitoring services.

51.     However, even with complimentary credit monitoring services, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

52.     Additionally, credit monitoring services do not prevent fraud and identity theft from occurring. It only alerts the individual once the fraud and identity theft has **already** occurred. Thus, it does nothing to prevent future harm to Plaintiffs and the Class.

53.     According to information and belief, Defendant failed to adequately train and supervise its IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing them to lose control over Plaintiffs' and the Class's PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing their PII.

### *The Data Breach was a Foreseeable Risk and BCLP was on Notice.*

54.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and data breaches affecting law firms preceding the date of the Breach.[34]

---

[34] *See Law Firm Cyberattacks Grow, Putting Operations in Legal Peril*, BLOOMBERG LAW (July 7, 2023, 4:30AM), https://news.bloomberglaw.com/business-and-practice/law-firm-cyberattacks-grow-putting-operations-in-legal-peril (last visited Oct. 19, 2023); *see also Law Firm Data Breaches Surge In 2023*, Above the Law (Aug. 1, 2023, 11:42 AM), https://abovethelaw.com/2023/08/law-firm-data-breaches-surge-in-2023/ (last visited Oct.

55.     In light of recent high profile data breaches at other law firms,[35] Defendant knew or should have known that their electronic records containing Plaintiffs' and the Class's PII would be targeted by cybercriminals.

56.     According to Bloomberg, "[n]ews of data breaches at prominent firms has become close to a weekly occurrence."[36] In fact, "[m]ore than a quarter of law firms in a 2022 American Bar Association survey said they had experienced a data breach, up 2% from the previous year."[37]

57.     "The diversity of client data that law firms handle—financial statements, medical data, and criminal records—makes them a valuable target for cybercriminals."[38]

_____

19, 2023).

[35] *See Law Firm Data Breaches Surge In 2023*, Above the Law (Aug. 1, 2023, 11:42 AM), https://abovethelaw.com/2023/08/law-firm-data-breaches-surge-in-2023/ (last visited Oct. 19, 2023); *Cyberattacks 'Inevitable for Law Firms, Highlighting Need for Comprehensive Incident Response Plans*, THE AMERICAN LAWYER (Jan. 10, 2023, 11:41 AM) https://www.law.com/americanlawyer/2023/01/10/cyberattacks-inevitable-for-law-firms-highlighting-need-for-comprehensive-incident-response-plans/#:~:text=Cyberattacks%20 on%20law%20firms%20have,business%20data%20compromised%20by%20hackers (last visited Oct. 19, 2023); *Hacked and Smacked: the Lurking Danger and Costly Ramifications of a Data Breach for Attorneys*, AON ATTORNEYS ADVANTAGE, https://www.attorneys-advantage.com/Resources/Data-Breach-For-Attorneys, (last visited Oct. 19, 2023); Massive Cybersecurity Breach Hits Biggest US Law Firms, New York Post (July 8, 2023, 4:20 PM), https://nypost.com/2023/07/08/large-global-law-firms-affected-by-massive-data-brach/, (last visited Oct. 19, 2023).

[36] *Law Firm Cyberattacks Grow, Putting Operations in Legal Peril*, BLOOMBERG LAW (July 7, 2023, 4:30AM), https://news.bloomberglaw.com/business-and-practice/law-firm-cyberattacks-grow-putting-operations-in-legal-peril (last visited Oct. 19, 2023)

[37] *Id.*

[38] *Id.*

58.     "Experts have consistently noted that many law firms fall short of best cybersecurity practices."[39]

59.     The BCLP Data Breach "underscores the increasing frequency of cyber attacks on law firms, which has seen a worrying escalation in recent years. Such breaches often involve sensitive data of both the firms and their clients, highlighting the need for improved security protocols within the industry."[40]

60.     Indeed, cyberattacks against the both the legal industry and other industries have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[41]

61.     In 2021, a record 1,862 data breaches occurred, resulting in approximately

---

[39] *Law Firm Data Breaches Surge In 2023*, Above the Law (Aug. 1, 2023, 11:42 AM), https://abovethelaw.com/2023/08/law-firm-data-breaches-surge-in-2023/ (last visited Oct. 19, 2023).

[40] *Law Firm Bryan Cave Leighton Painer Victim of Major Cyberattack*, ONE2CALL, https://www.one2call.net/law-firm-bryan-cave-leighton-paisner-bclp-victim-of-major-cyber-attack/ (last visited Oct. 19, 2023).

[41]         *Gordon       M.       Snow       Statement*,       FBI https://archives.fbi.gov/archives/news/testimony/cyber-   security-threats-to-the-financial-sector.

293,927,708 sensitive records being exposed, a 68% increase from 2020.[42] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[43]

62.      "[E]arlier this year, Proskauer Rose confirmed a similar breach that exposed its clients' sensitive financial information to hackers. In 2021, data from Goodwin Procter and Jones Day was exposed through a breach at tech provider Accellion, now known as Kiteworks. The firms confirmed the breach resulted in confidential client data exposure. Covington & Burling faced an attack in 2020 that possibly exposed nonpublic information involving about 300 corporate clients. And only recently the Australian law firm HWL Ebsworth announced that it has been the target of a Cyber Attack which resulted in the breach of government data. These incidents highlight a clear pattern of persistent security threats facing law firms and the need for comprehensive cyber security measures to ensure the protection of sensitive client data."[44]

63.      Therefore, the increase in such attacks, and attendant risk of future attacks,

---

[42] *2021 Data Breach Annual Report*, ITRC, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf.

[43] *Id.*

[44] *Law Firm Bryan Cave Leighton Painer Victim of Major Cyberattack*, ONE2CALL, https://www.one2call.net/law-firm-bryan-cave-leighton-paisner-bclp-victim-of-major-cyber-attack/ (last visited Oct. 19, 2023).

was widely known to the public and to anyone in Defendant's industry, including BCLP.

*Plaintiff Rock Meyer's Experience*

64.     Plaintiff Meyer received a Notice of Data Breach Letter, dated June 15, 2023, notifying him that an unauthorized third-party "**acquired certain data**" which included his Social Security number, first and last name, date of birth, address, marital status, gender, employee identification number, and retirement and/or thrift plan information.[45]

65.     Defendant deprived Plaintiff Meyer of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for over four (4) months.

66.     As a result of the Data Breach, Plaintiff Meyer spent ***hours*** dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach Letter, self-monitoring his accounts and credit reports to monitor any suspicious and/or fraudulent activity, and researching the inadequate credit monitoring services offered to him. This time has been lost forever and cannot be recaptured. Plaintiff Meyer has spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft and fraud for the rest of his life.

67.     Plaintiff Meyer fears for his personal financial security because his PII was accessed, acquired, and stolen by criminals during the Data Breach. Plaintiff Meyer has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or

---

[45] *See* Exhibit 1.

inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

68.     Since the Data Breach, Plaintiff Meyer has been burdened by an influx of spam calls and emails. Plaintiff Meyer reasonably attributes these spam calls and emails to the Data Breach because they have increased significantly after the Data Breach. He was not receiving spam emails and calls of this volume before the Data Breach.

69.     Plaintiff Meyer suffered actual injury in the form of damages to and diminution in the value of Plaintiff Meyer's PII—a form of intangible property that was compromised as a result of BCLP's Data Breach.

70.     Plaintiff Meyer has suffered an extreme invasion of his privacy because cybercriminals not only accessed his confidential and personal PII but acquired it as well.

71.     Plaintiff Meyer has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII being accessed, acquired, and stolen by criminals. The fact that Defendants offered Plaintiffs and the Class credit monitoring services confirms the certainly impending risk of identity theft and fraud. Moreover, Plaintiff Meyer is at an imminent and impending risk of harm because cybercriminals already have or will post his Private Information on the dark web.

72.     Plaintiff Meyer has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

73.     Plaintiff Meyer also suffered injury directly and proximately caused by the

Data Breach, including: (i) theft of Plaintiff Meyer's valuable PII; (ii) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff Meyer's PII being placed in the hands of cyber criminals; (iii) damages to and diminution in value of Plaintiff Meyer's PII; (iv) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff Meyer should have received from Defendant and Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff Meyer's PII; (v) continued risk to Plaintiff Meyer's PII, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the PII that was entrusted to Defendant; and (vi) invasion of privacy due to cybercriminals taking possession of his PII and likely posting it on the dark web (if they have not done so already).

### *Plaintiff Eric D. Flores' Experience*

74.     Plaintiff Flores received a Notice of Data Breach Letter, dated June 15, 2023, notifying him that an unauthorized third-party "**acquired certain data**" which included his Social Security number, first and last name, date of birth, address, marital status, gender, employee identification number, and retirement and/or thrift plan information.[46]

75.     Defendant deprived Plaintiff Flores of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it for over four (4) months.

---

[46] *See* Exhibit 2.

76.     As a result of the Data Breach, Plaintiff Flores spent **hours** dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach Letter, self-monitoring his accounts and credit reports to monitor suspicious and fraudulent activity, and researching the inadequate credit monitoring services offered to him. This time has been lost forever and cannot be recaptured. Plaintiff Flores has spent and will continue to spend considerable time and effort monitoring his accounts to protect himself from identity theft and fraud for the rest of his life.

77.     Plaintiff Flores fears for his personal financial security because his PII was accessed, acquired, and stolen by criminals during the Data Breach. Plaintiff Flores has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

78.     Plaintiff Flores suffered actual injury in the form of damages to and diminution in the value of Plaintiff Flores's PII—a form of intangible property that was compromised as a result of BCLP's Data Breach.

79.     Plaintiff Flores has suffered an extreme invasion of his privacy because cybercriminals not only accessed his confidential and personal PII but acquired it as well.

80.     Plaintiff Flores has suffered imminent and impending injury arising from the substantially increased risk of fraud and identity theft resulting from his PII being accessed, acquired, and stolen by criminals. The fact that Defendants offered Plaintiffs and the Class

credit monitoring also confirms the certainly impending risk of identity theft and fraud. Moreover, Plaintiff Flores is at an imminent and impending risk of harm because cybercriminals already have or will post his Private Information on the dark web.

81.     Plaintiff Flores has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

82.     Plaintiff Flores also suffered injury directly and proximately caused by the Data Breach, including: (i) theft of Plaintiff Flores' valuable PII; (ii) the imminent and certain impending injury flowing from fraud and identity theft posed by Plaintiff Flores' PII being placed in the hands of cyber criminals; (iii) damages to and diminution in value of Plaintiff Flores' PII; (iv) loss of the benefit of the bargain with Defendant to provide adequate and reasonable data security—*i.e.*, the difference in value between what Plaintiff Flores should have received from Defendant and Defendant's defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff Flores' PII; (v) invasion of privacy due to criminals taking possession of his PII and likely posting it on the dark web (if they have not done so already); and (vi) continued risk to Plaintiff Flores' PII, which remains in the possession of Defendant and which is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the PII that was entrusted to Defendant.

### *Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft*

83.     Plaintiffs and members of the proposed Class have suffered injuries from

the Data Breach that can be directly traced to Defendant.

84.     As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and the proposed Class have suffered and/or will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

    a.  The loss of the opportunity to control how their PII is used;

    b.  The diminution in value of their PII;

    c.  The compromise and continuing publication of their PII;

    d.  out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.  Delay in receipt of tax refund monies;

    g.  Unauthorized use of stolen PII; and

    h.  The continued risk to their PII, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

85.     Stolen PII is one of the most valuable commodities on the criminal

information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

86.     The value of Plaintiffs' and the Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen PII openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

87.     It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

88.     One such example of criminals using PII for profit is the development of "Fullz" packages.

89.     Cybercriminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

90.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening

to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

91.     Defendant disclosed the PII of Plaintiffs and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

92.     Defendant's failure to properly notify Plaintiffs and members of the Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

### Defendant Failed to Adhere to FTC Guidelines.

93.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

94.     In 2016, the FTC updated its publication, Protecting PII: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a. protect the sensitive consumer information that they keep;

    b. properly dispose of PII that is no longer needed;

    c. encrypt information stored on computer networks;

    d. understand their network's vulnerabilities; and

    e. implement policies to correct security problems.

95. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

96. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

97. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

98. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice

prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## V.   CLASS ACTION ALLEGATIONS

99.     Plaintiffs sue on behalf of themselves and the proposed classes defined as

follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

> **Nationwide Class**
>
> All individuals residing in the United States whose PII was compromised in the Data Breach discovered by BCLP on or around February 27, 2023, and received a Notice of Data Breach Letter.
>
> **California Subclass**
>
> All individuals residing in the State of California whose PII was compromised in the Data Breach discovered by BCLP on or around February 27, 2023, and received a Notice of Data Breach Letter.

Excluded from the Class(es) is Defendant, Mondelez, its agents, affiliates, parents,

subsidiaries, any entity in which Defendant has a controlling interest, any of Defendant's

officers or directors, any successors, and any Judge who adjudicates this case, including

their staff and immediate family.

100.    Plaintiffs reserve the right to amend the class definitions above.

101.    This action satisfies the numerosity, commonality, typicality, and adequacy

requirements under Fed. R. Civ. P. 23.

> a.    **Numerosity**. Plaintiffs are representative of the Class, consisting of at least 51,000 members, far too many to join in a single action;
>
> b.    **Ascertainability**. Members of the Class are readily identifiable

from information in Defendant's possession, custody, and control;

c.     **<u>Typicality</u>**. Plaintiffs' claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

d.     **<u>Adequacy</u>**. Plaintiffs will fairly and adequately protect the proposed Class's interests. Plaintiffs' interests do not conflict with the Class's interests, and they have retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

e.     **<u>Commonality</u>**. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for the Class. Indeed, it will be necessary to answer the following questions:

  i.     Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII;

  ii.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

  iii.   Whether Defendant was negligent in maintaining,

protecting, and securing PII;

iv.  Whether Defendant breached contractual promises to safeguard Plaintiffs' and the Class's PII;

v.  Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

vi.  Whether Defendant's Breach Notice was reasonable;

vii.  Whether the Data Breach caused Plaintiffs' and the Class's injuries;

viii.  What the proper damages measure is; and

ix.  Whether Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

102.  Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual Plaintiffs are insufficient to make individual lawsuits economically feasible.

## VI.  CAUSES OF ACTION

### COUNT ONE
### Negligence
### (On Behalf of Plaintiffs and the Nationwide Class)

103.  Plaintiffs reallege all previous paragraphs as if fully set forth below.

104.  Plaintiffs' and Class Members' PII was entrusted to Defendant. Defendant owed to Plaintiffs and the Class a duty to exercise reasonable care in handling and using

the PII in its care and custody, including implementing industry-standard security procedures, protocols, and infrastructure sufficient to protect the information from a data breach, and to promptly detect attempts at unauthorized access.

105.     Defendant owed a duty of care to Plaintiffs and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and the Class's PII by disclosing and providing access to this information to unauthorized third parties and by failing to properly store this information, protect it, and for its failure to supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

106.     Defendant owed to Plaintiffs and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiffs and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiffs and the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

107.     Defendant owed these duties to Plaintiffs and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom

Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and the Class's PII.

108.     The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant held vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII — whether by malware, ransomware, or otherwise.

109.     PII is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiffs and the Class and the importance of exercising reasonable care in handling it. Especially with multiple other law firms experiencing data breaches in recent years.

110.     Defendant breached its duties by failing to exercise reasonable care in protecting the PII of Plaintiffs and the Class, supervising and monitoring its employees, agents, contractors, vendors, and suppliers, and in handling and securing the PII of Plaintiffs and the Class which actually and proximately caused the Data Breach and Plaintiffs' and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm,

embarrassment, humiliation, frustration, and emotional distress.

111.    Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## COUNT TWO
### Negligence *Per Se*
### (On Behalf of Plaintiffs and the Nationwide Class)

112.    Plaintiffs reallege all previous paragraphs as if fully set forth below.

113.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's PII.

114.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted, and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, its customer's current and former employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's PII.

115.     Defendant breached its respective duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

116.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

117.     Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and the Class's PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

118.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

119.     But for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and members of the Class, Plaintiffs and members of the Class would not have been injured.

120.     The injury and harm suffered by Plaintiffs and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

121.     Had Plaintiffs and the Class known that Defendant did not adequately protect their PII, Plaintiffs and members of the Class would not have allowed Defendant to access their PII.

122.     Defendant's various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

123.     As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

124.     Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their PII in its continued possession.

**COUNT THREE**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

125.    Plaintiffs reallege all previous paragraphs as if fully set forth below.

126.    This claim is pled in the alternative to the breach of contract claim(s).

127.    Plaintiffs and members of the Class conferred a benefit upon Defendant. Defendant benefited from the receipt of Plaintiffs' and the Class's PII, as this was used to facilitate the services it sold to businesses. Without Plaintiffs' and the Class's PII, Defendant would not be able to provide services and would not be able to obtain profit and revenue therefrom.

128.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and the Class.

129.    However, acceptance of the benefit under the facts and circumstances outlined above make it inequitable for Defendant to retain that benefit without payment of the value thereof. Specifically, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite data security.

130.    Under the principles of equity and good conscience, Defendant should not

be permitted to retain the monetary benefit, because Defendant failed to implement appropriate data management and security measures.

131.     Defendant acquired the PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

132.     If Plaintiffs and the Class had known that Defendant would not secure the PII it was entrusted with, they would not allow their PII be provided to Defendant.

133.     Plaintiffs and Class Members have no adequate remedy at law.

134.     As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered or will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

135.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

136.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class Members, proceeds that they unjustly received for business services on their behalf.

**COUNT FOUR**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**("CFA"), 815 Ill. Comp. Stat. §§ 505/1, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

137.    Plaintiffs reallege all previous paragraphs as if fully set forth below.

138.    Plaintiffs and the Class are "consumers" as defined in 815 Ill. Comp. Stat. § 505/1(e).  Plaintiffs, the Class, and Defendant are "persons" as defined in 815 Ill. Comp. Stat. § 505/1(c).

139.    Defendant engaged in "trade" or "commerce," including the provision of services, as defined under 815 Ill. Comp. Stat. § 505/1(f). Defendant engages in the sale of "merchandise" (including services) as defined by 815 Ill. Comp. Stat. § 505/1(b) and (d).

140.    Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment and omission of material facts in connection with the sale and advertisement of its services in violation of the CFA, including: (i) failing to maintain adequate data security to keep Plaintiffs' and the Class Members' sensitive PII from being stolen by cybercriminals and failing to comply with applicable state and federal laws and industry standards pertaining to data security, including the FTC Act; (ii) failing to disclose or omitting materials facts regarding their lack of adequate data security and

inability or unwillingness to properly secure and protect the PII of Plaintiffs and the Class; (iii) failing to disclose or omitting materials facts about Defendant's failure to comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the PII of Plaintiffs and the Class; and (iv) failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiffs' and the Class's PII and other PII from further unauthorized disclosure, release, data breaches, and theft.

141.    These actions also constitute deceptive and unfair acts or practices because Defendant knew the facts about their inadequate data security and failure to comply with applicable state and federal laws and industry standards would be unknown to and not easily discoverable by Plaintiffs and the Class and defeat their reasonable expectations about the security of their PII.

142.    Defendant intended reliance on its deceptive and unfair acts and practices and the concealment and omission of material facts in connection with Defendant's goods and services.

143.    Defendant's wrongful practices were and are injurious to the public because those practices were part of Defendant's generalized course of conduct that applied to the Class. Plaintiffs and the Class have been adversely affected by Defendant's conduct and the public was and is at risk as a result thereof.

144.    Defendant also violated 815 ILCS 505/2 by failing to immediately notify Plaintiffs and the Class of the nature and extent of the Data Breach pursuant to the Illinois

PII Protection Act, 815 ILCS 530/1, *et seq*.

145.     As a result of Defendant's wrongful conduct, Plaintiffs and the Class were injured in that they never would have allowed their PII to be provided to Defendant had they known or been told that Defendant failed to maintain sufficient security to keep their PII from being hacked and taken and misused by others.

146.     As a direct and proximate result of Defendant's violations of the CFA, Plaintiffs and the Class have suffered harm:  (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

147.     Pursuant to 815 Ill. Comp. Stat. § 505/10a(a), Plaintiffs and the Class seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as

a result of Defendant's violations of the CFA.

**COUNT FIVE**
**Violations of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
**(On Behalf of Plaintiff Flores and the California Subclass)**

148.    Plaintiff Flores (referred to as "Plaintiff" throughout this Count) realleges all previous paragraphs as if fully set forth below.

149.    Defendant is a "person" defined by Cal. Bus. & Prof. Code § 17201.

150.    Defendant violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

151.    In the course of conducting its business, Defendant committed "unlawful" business practices by, *inter alia*, failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class Members' PII, and by violating the statutory and common law alleged herein, including, *inter alia*, the California Consumer Privacy Act of 2018 (Cal. Civ. Code § 1798.100, *et seq.*), Cal. Civil Code § 1798.81.5, Cal. Civ. Code § 1798.80 *et seq.*, and Section 5 of the FTC Act. Plaintiff and Class Members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. Defendant's above-described wrongful actions, inaction, and want of ordinary care are ongoing and continue to this date.

152.    Defendant also violated the UCL by failing to timely notify Plaintiff and Class members pursuant to Civil Code § 1798.82(a) regarding the unauthorized access and

disclosure of their PII. If Plaintiff and Class Members had been notified in an appropriate fashion, they could have taken precautions to safeguard and protect their PII and identities.

153.    Defendant violated the unfair prong of the UCL by establishing the sub-standard security practices and procedures described herein and storing Plaintiff's and Class Members' PII in an unsecure, internet accessible, electronic environment. Specific failures to follow industry standards and exercise reasonable care include: failing to encrypt the PII accessed during the Data Breach; maintaining customer PII for longer than it has a legitimate use; failing to regularly update passwords; failure to implement two-factor authentication for access to accounts and systems containing PII; failing to adequately train employees to recognize phishing and other social engineering techniques; and failing to implement and use software that can adequately detect phishing emails. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class Members.  The harm these practices caused to Plaintiff and Class Members outweighed their utility, if any.

154.    Defendant's above-described wrongful actions, inaction, want of ordinary care, and practices also constitute "unfair" business acts and practices in violation of the UCL in that Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and unscrupulous. Defendant's practices are also contrary to legislatively declared and public policies that seek to protect PII and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws such as the CCPA,

CRA, and the FTC Act (15 U.S.C. § 45). The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendant's legitimate business interests other than engaging in the above-described wrongful conduct.

155.    Defendant engaged in unfair business practices under the "balancing test." The harm caused by Defendant's failure to implement proper data security measures, as described in detail above, greatly outweighs any perceived utility. Indeed, Defendant's failure to follow basic data security protocols cannot be said to have had any utility at all. All of these actions and omissions were clearly injurious to Plaintiff and Class Members, directly causing the harms alleged.

156.    Defendant engaged in unfair business practices under the "tethering test." Defendant's failure to implement proper data security measures, as described in detail above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

157.    Defendant engaged in unfair business practices under the "FTC test." The harm caused by Defendant's failure to implement proper data security measures, as described in detail above, is substantial in that it affects thousands of Class Members and has caused those persons to suffer actual harms. This harm continues given the fact that Plaintiff's and California Subclass members' PII remains in Defendant's possession, without adequate protection, and is also in the hands of those who obtained it without their consent. Defendant's actions and omissions violated Section 5(a) of the Federal Trade Commission Act. *See* 15 U.S.C. § 45(n) (defining "unfair acts or practices" as those that "cause[ ] or [are] likely to cause substantial injury to consumers which [are] not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition"); *see also, e.g., In re LabMD, Inc.*, FTC Docket No. 9357, FTC File No. 102-3099 (July 28, 2016) (failure to employ reasonable and appropriate measures to secure personal information collected violated § 5(a) of FTC Act).

158.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members' were injured and lost money or property,  which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value and the right to control their personal information.

159.    Defendant's violations were, and are, willful, deceptive, unfair, and unconscionable.

160.    Plaintiff and California Subclass Members have lost money and property as a result of Defendant's conduct in violation of the UCL, as stated herein and above.

161.    By deceptively storing, collecting, and disclosing their personal information, Defendant has taken money or property from Plaintiff and California Subclass Members.

162.    Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

163.    Plaintiff and California Class Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

**COUNT SIX**
**Violations of the California Consumer Privacy Act**
**Cal. Civ Code §§ 1798.100 *et seq.*, § 1798.150(a)**
<u>**(On Behalf of Plaintiff Flores and the California Subclass)**</u>

164.    Plaintiff Flores (referred to as "Plaintiff" throughout this Count) realleges all previous paragraphs as if fully set forth below.

165.    The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a), creates a private cause of action for violations of the CCPA. Section 1798.150(a) specifically provides:

Any consumer whose nonencrypted and nonredacted personal information, as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:

(A)     To recover damages in an amount not less than one hundred dollars ($100) and   not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.

(B)     Injunctive or declaratory relief.

(C)     Any other relief the court deems proper.

166.    Defendant is a "business" under § 1798.140(b) because Defendant:

a. is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners";

b. "collects consumers' personal information, or on the behalf of which is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information";

c. does business in California; and

d. has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices; or derives 50

percent or more of its annual revenues from selling consumers' personal information.

167. Plaintiff and California Subclass Members are covered "consumers" under § 1798.140(g) in that they are natural persons who are California residents.

168. The Private Information taken in the Data Breach is personal information as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiffs' and California Subclass members' unencrypted first and last names and Social Security numbers among other information.

169. Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the California Subclass Members' personal information and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff and the California Subclass Members. Specifically, Defendant subjected Plaintiff's and the California Subclass Members' nonencrypted and nonredacted personal information to an unauthorized access and exfiltration, theft, or disclosure as a result of the Defendant's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information, as described herein.

170. Plaintiffs' and California Subclass members' unencrypted and unredacted Private Information was subject to unauthorized access and exfiltration, theft, or disclosure because their PII, including name and contact information was wrongfully taken, accessed,

and viewed by unauthorized third parties.

171.    The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiffs' and California Subclass members' PII. Defendant failed to implement reasonable security procedures to prevent an attack on its server or network, including its email system, by hackers and to prevent unauthorized access of Plaintiffs' and California Subclass members' PII as a result of this attack.

172.    As a direct and proximate result of Defendant's violation of its duty, the unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and California Subclass Members' personal information included exfiltration, theft, or disclosure through Defendant's servers, systems, and website, and/or the dark web, where hackers further disclosed the personal identifying information alleged herein.

173.    As a direct and proximate result of Defendant's acts, Plaintiff and the California Subclass Members were injured and lost money or property, including but not limited to the loss of Plaintiff's and California Subclass Members' legally protected interest in the confidentiality and privacy of their personal information, stress, fear, and anxiety, nominal damages, and additional losses described above.

174.    More than 30 days from the filing of this Consolidated Complaint, Plaintiff Flores provided Defendant with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). Defendant failed to respond and/or has not cured or is unable to cure the violations described therein. Plaintiffs seek all relief available under the CCPA

including damages to be measured as the greater of actual damages or statutory damages in an amount up to seven hundred and fifty dollars ($750) per consumer per incident. *See* Cal. Civ. Code § 1798.150(a)(1)(A) & (b).

## COUNT SEVEN
### Injunctive and Declaratory Relief
### (On Behalf of Plaintiffs and the Nationwide Class)

175.    Plaintiffs reallege all previous paragraphs as if fully set forth below.

176.    This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

177.    As previously alleged and pleaded, Defendant owes duties of care to Plaintiffs and Class Members that requires it to adequately secure their Private Information.

178.    Defendant still possesses the Private Information of Plaintiffs and the Class Members.

179.    Defendant has not satisfied its obligations and legal duties to Plaintiffs and the Class Members.

180.    Defendant has claimed that it is taking some steps to increase its data security, but there is nothing to prevent Defendant from reversing these changes once it has weathered the increased public attention resulting from this Breach, and to once again place profits above protection.

181.    Plaintiffs, therefore, seek a declaration (1) that Defendant's existing security measures do not comply with its obligations and duties of care to provide adequate security,

and (2) that to comply with its obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

    a. Ordering Defendant to engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b. Ordering Defendant to significantly increase its spending on cybersecurity including systems and personnel;

    c. Ordering Defendant to engage third-party security auditors and internal personnel to run automated security monitoring;

    d. Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

    e. Ordering that Defendant segments Plaintiffs' and the Class's Private Information by, among other things, creating firewalls and access controls so that if one area of Defendant' systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

    f. Ordering that Defendant cease storing unencrypted Private Information on its systems;

    g. Ordering that Defendant conduct regular database scanning and securing checks;

h.   Ordering Defendant to routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

i.   Ordering Defendant to implement and enforce adequate retention policies for Private Information, including destroying, in a reasonably secure manner, Private Information once it is no longer necessary for it to be retained; and

j.   Ordering Defendant to meaningfully educate its current, former, and prospective employees about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps they must take to protect themselves.

**COUNT EIGHT**
**Breach of Third-Party Beneficiary Contract**
**<u>(On Behalf of Plaintiffs and the Nationwide Class)</u>**

182.   Plaintiffs reallege all previous paragraphs as if fully set forth below.

183.   Plaintiffs and Class Members are intended third-party beneficiaries of a contract entered into between BCLP and Mondelez (the "contracting parties"), including a contract entered into before the Data Breach to provide legal services and securely store Plaintiffs' and the Class's PII that BCLP obtained from Mondelez (the "Contract").

184.   On information and belief, that respective contract contained provisions requiring BCLP to protect the PII that Mondelez received and in turn, disclosed to BCLP, in order to provide services to Mondelez.

185.    On information and belief those provisions requiring BCLP to protect the PII it received from Mondelez were intentionally included for the direct benefit of Plaintiffs and Class Members, such that Plaintiffs and Class Members are intended third-party beneficiaries of this contract and are therefore entitled to enforce them.

186.    BCLP breached the contract by not safeguarding Plaintiffs' and Class Members' PII and not utilizing adequate data security, as described herein, resulting in the Data Breach.

187.    Exposure, breach, and identity theft were the expected risks both contracting parties could foresee from the improper performance of the Contract.

188.    The injuries suffered by Plaintiffs and Class Members were the kind that proper performance was intended to prevent.

189.    As a direct and proximate result of BCLP's breaches, Plaintiffs and Class Members sustained actual losses and damages as described in detail herein.

190.    Accordingly, Plaintiffs and Class Members are entitled to damages in an amount to be determined at trial.

## COUNT NINE
### Bailment
### (On Behalf of Plaintiffs and the Nationwide Class)

191.    Plaintiffs reallege all previous paragraphs as if fully set forth below.

192.    Plaintiffs' and Class Members' PII was provided to BCLP through its business relationship with Mondelez in the ordinary course of business.

193.    BCLP was under a duty to keep the PII it received, including that of Plaintiffs' and the Class's, private and confidential.

194.    There was a shared understanding that Plaintiffs' and the Class's PII would remain confidential.

195.    Plaintiffs' and Class Members' PII is personal property, and it was conveyed to BCLP for the certain purpose of keeping the information private and confidential.

196.    Plaintiffs' and Class Members' PII has value, and it is highly prized by hackers and cybercriminals. BCLP was aware of the risks it took when accepting their PII for safeguarding, and it assumed the risk voluntarily.

197.    Once BCLP accepted Plaintiffs' and Class Members' PII, it was in the exclusive possession of that PII, and neither Plaintiffs nor Class Members could control that information once it was within BCLP's possession, custody, and control.

198.    BCLP did not safeguard Plaintiffs' or Class Members' PII when it failed to adopt and enforce adequate security safeguards to prevent a known risk of cyberattack.

199.    BCLP's failure to safeguard Plaintiffs' and Class Members' PII resulted in their PII being accessed and obtained by third-party cybercriminals.

200.    BCLP failed to return Plaintiffs' and the Class's PII after the Breach.

201.    As a result of BCLP's failure to keep Plaintiffs' and Class Members' PII secure, Plaintiffs and Class Members suffered injury, for which compensation-including nominal damages and compensatory damages-are appropriate.

## VII.   **PRAYER FOR RELIEF**

Plaintiffs and the Class demand a jury trial on all claims so triable and request

that the Court enter an order:

    a.  Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

    b.  Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class;

    c.  Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Class;

    d.  Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

    e.  Awarding Plaintiffs and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

    f.  Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

    g.  Awarding attorneys' fees and costs, as allowed by law;

    h.  Awarding prejudgment and post-judgment interest, as provided by law;

i. Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

j. Granting such other or further relief as may be appropriate under the circumstances.

## VIII.    JURY DEMAND

Plaintiffs hereby demand that this matter be tried before a jury.

Dated: November 10, 2023                    Respectfully submitted,

*/s/: William B. Federman*
William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK  73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
*Interim Lead Class Counsel*

Thomas A. Zimmerman, Jr.
(IL #6231944)
tom@attorneyzim.com
**ZIMMERMAN LAW
OFFICES, P.C.**
77 W. Washington Street
Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
*Interim Liaison Class Counsel*

M. Anderson Berry
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778

Facsimile: (916) 924-1829
aberry@justice4you.com
***Additional Counsel for Plaintiffs and
the Class***