## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: BRYAN CAVE LEIGHTON PAISNER, LLP DATA BREACH LITIGATION** | Case No. 1:23-CV-04249<br><br>Judge Jorge L. Alonso |

## MEMORANDUM IN SUPPORT OF DEFENDANT BRYAN CAVE LEIGHTON PAISNER, LLP'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Daniel R. Warren
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, IL 60606
(312) 416-6200
dwarren@bakerlaw.com

Dante A. Marinucci
**BAKER & HOSTETLER LLP**
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200
dmarinucci@bakerlaw.com

*Attorneys for Defendant*
*Bryan Cave Leighton Paisner, LLP*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

LEGAL STANDARD ........................................................................................... 2

LAW AND ARGUMENT ..................................................................................... 3

    I.    PLAINTIFFS DO NOT ALLEGE A CONCRETE HARM AND THUS LACK
        STANDING. ................................................................................................ 3

    A.    RISK OF FUTURE HARM IS NOT AN ARTICLE III INJURY. ......................... 3

    B.    PLAINTIFFS' OTHER ALLEGED HARMS ARE NOT ARTICLE III INJURIES
        EITHER. ................................................................................................... 6

    II.    EVEN APART FROM LACK OF STANDING, PLAINTIFFS' STATUTORY CLAIMS
        FAIL. ..................................................................................................... 10

    A.    PLAINTIFFS DO NOT HAVE A VALID CLAIM UNDER ICFA (COUNT IV). ............... 10

        1.    ALL THE ICFA CLAIMS FAIL FOR MULTIPLE REASONS. ........................... 10

        2.    Plaintiffs' PIPA-Based ICFA Claim Fails for Additional Reasons. ......... 13

    B.    PLAINTIFF FLORES DOES NOT STATE A CLAIM UNDER THE UCL (COUNT V). ........ 14

    C.    PLAINTIFF FLORES FAILS TO STATE A CCPA CLAIM (COUNT VI). ....................... 15

        1.    This Case Is Subject to the CCPA's "Outside of California"
            Exemption. ............................................................................................ 15

        2.    The CCPA Does Not Apply to BCLP as a "Third Party." ........................ 16

        3.    Plaintiff's Allegations Are Wholly Conclusory. ....................................... 17

    III.    PLAINTIFFS' COMMON-LAW CLAIMS FAIL TOO. .................................. 18

    A.    PLAINTIFFS' COMMON-LAW CLAIMS ALL FAIL FOR LACK OF DAMAGES. ............. 18

    B.    PLAINTIFFS DO NOT STATE A CLAIM FOR NEGLIGENCE (COUNT I). ................... 19

        1.    Illinois Does Not Recognize a Common-Law Duty To Protect
            Information. .......................................................................................... 19

        2.    Plaintiffs' Negligence Claim Is Also Barred by the Economic Loss
            Rule. .................................................................................................... 20

C.      THE FTC ACT DOES NOT SUPPORT A CLAIM OF NEGLIGENCE *PER SE* (COUNT II). ................................................................................................. 21

D.      PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS BECAUSE THEY NEVER PROVIDED ANYTHING TO BCLP (COUNT III). ......................................................... 22

E.      PLAINTIFFS' ALLEGATION THAT THEY ARE INTENDED BENEFICIARIES OF A CONTRACT BETWEEN BCLP AND MONDELĒZ IS IMPLAUSIBLE (COUNT VIII). ....................................................................................................................... 22

F.      PII IS NOT PROPERTY THAT CAN BE DELIVERED, SO PLAINTIFFS' BAILMENT CLAIM FAILS (COUNT IX). ................................................................... 24

IV.     PLAINTIFFS' CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF FAIL (COUNT VII). ....................................................................................................... 25

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbasi by & ex rel. Abbasi v. Paraskevoulakos,*
718 N.E.2d 181 (Ill. 1999) ..........................................................................................22

*Alarm Detection Sys., Inc. v. Orland Fire Protection Dist.,*
929 F.3d 865 (7th Cir. 2019) .......................................................................................25

*Alleruzzo v. SuperValu, Inc.,*
925 F.3d 955 (8th Cir. 2019) .......................................................................................22

*Archey v. Osmose Utilities Servs., Inc.,*
2021 WL 3367156 (N.D. Ill. Aug. 3, 2021) ...............................................................12

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................................2

*Ashlaur Constr. Co. v. Levy Co.,*
2023 WL 3720863 (Ill. App. May 30, 2023) ..............................................................18

*Attias v. CareFirst, Inc.,*
365 F. Supp. 3d 1 (D.D.C. 2019) ................................................................................19

*Avery v. State Farm Mut. Auto. Ins. Co.,*
835 N.E.2d 801 (Ill. 2005)...........................................................................................12

*Baysal v. Midvale Indem. Co.,*
78 F.4th 976 (7th Cir. 2023) ..........................................................................................7

*Beck v. McDonald,*
848 F.3d 262 (4th Cir. 2017) .........................................................................................5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........................................................................................................2

*Bell v. Blizzard Ent., Inc.,*
2013 WL 12132044 (C.D. Cal. July 11, 2013)............................................................24

*Benham v. First Am. Home Buyers Protec. Corp.,*
2015 WL 5098068 (Cal. App. Aug. 31, 2015) ............................................................15

*Blood v. Labette Cnty. Med. Ctr.,*
2022 WL 11745549 (D. Kan. Oct. 20, 2022) ...............................................................7

*Bob Evans Farms, Inc. v. Excellent Builders, Inc.*,
    1988 WL 80137 (N.D. Ill. July 25, 1988) ............................................................23

*Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) ......................................................................18

*Choice v. Kohn Law Firm, S.C.*,
    77 F.4th 636 (7th Cir. 2023) ..........................................................................7

*Ciccone v. Cavalry Portfolio Servs., LLC*,
    2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) ................................................9

*City of Reno v. Netflix, Inc.*,
    52 F.4th 874 (9th Cir. 2022) ........................................................................25

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .................................................................................4, 7

*Clearview AI, Inc. Consumer Privacy Litig.*,
    585 F. Supp. 3d 1111 (N.D. Ill. 2022) ........................................................14

*Community Bank of Trenton v. Schnuck Markets, Inc.*,
    210 F. Supp. 3d 1022 (S.D. Ill. 2016) ........................................................22

*Community Bank of Trenton v. Schnuck Markets, Inc.*,
    887 F.3d 803 (7th Cir. 2018) ..........................................................19, 20, 21

*Cooney v. Chicago Public Schools*,
    943 N.E.2d 23 (Ill. App. 2010) ....................................................................19

*Cooper v. Bonobos, Inc.*,
    2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ..................................................7

*Cowper v. Nyberg*,
    28 N.E.3d 768 (Ill. 2015) ......................................................................18, 19

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) ......................................................................12

*Cripe v. Leiter*,
    703 N.E.2d 100 (Ill. 1998) ..........................................................................12

*De Martinez v. CRST Expedited, Inc.*,
    2023 WL 4247701 (C.D. Cal. May 10, 2023) ..............................................14

*Doe v. Chao*,
    540 U.S. 614 (2004) ....................................................................................19

*Duqum v. Scottrade, Inc.*,
   2016 WL 3683001 (E.D. Mo. July 12, 2016), *aff'd sub nom. Kuhns v.*
   *Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017) ............................................................6

*Ewing v. MED-1 Sols., LLC*,
   24 F.4th 1146 (7th Cir. 2022) ............................................................4

*Fed. Trade Comm'n v. Trudeau*,
   2013 WL 12212736 (N.D. Ill. Apr. 26, 2013) ............................................................21

*Florence v. Order Express, Inc.*,
   2023 WL 3602248 (N.D. Ill. May 23, 2023) ............................................................4, 6

*Fox v. Iowa Health Sys.*,
   399 F. Supp. 3d 780 (W.D. Wis. 2019) ............................................................20

*Gaddy v. Long & Foster Cos.*,
   2022 U.S. Dist. LEXIS 46657 (D.N.J. Mar. 15, 2022) ............................................................24

*Gardiner v. Walmart Inc.*,
   2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ............................................................14, 15

*Garner v. Buzz Finco LLC*,
   2022 WL 1085210 (N.D. Ill. Apr. 11, 2022) ............................................................10

*Griffey v. Magellan Health Inc.*,
   562 F. Supp. 3d 34 (D. Ariz. 2021) ............................................................18

*Gubala v. Time Warner Cable, Inc.*,
   846 F.3d 909 (7th Cir. 2017) ............................................................8, 24

*Harris v. JAT Trucking of Illinois, Inc.*,
   2009 WL 2222740 (C.D. Ill. 2009) ............................................................11

*Hess v. Kanski & Assoc.*,
   668 F.3d 446 (7th Cir. 2012) ............................................................11

*Hosseini v. Wells Fargo Bank, N.A.*,
   2013 WL 4279632 (N.D. Cal. Aug. 9, 2013) ............................................................15

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
   545 N.E.2d 672 (Ill. 1989) ............................................................22

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ............................................................7

*In re Illuminate Ed. Data Sec. Incident Litig.*,
   2023 WL 3158954 (C.D. Cal. April 19, 2023) ............................................................7

*In re MCG Health Data Security Issue Litig.*,
2023 WL 3057428 (W.D. Wash. Mar. 27, 2023) ...................................................21

*iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ......................................................14

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016) ...........................................................13, 14

*Kapotas v. Better Gov't Ass'n*,
30 N.E. 3d 572 (Ill. App. 2015) .............................................................................9

*Karraker v. Rent-A-Ctr., Inc.*,
411 F.3d 831 (7th Cir. 2005) ................................................................................9

*Karter v. Epiq Systems, Inc.*,
2021 WL 4353274 (C.D. Cal. July 16, 2021) ......................................................17

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ..............................................................................12

*Kim v. McDonald's USA, LLC*,
2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) .......................................................4

*Kirby v. Chicago City Bank and Trust Co.*,
403 N.E.2d 720 (Ill. App. 1980) ........................................................................24

*Kurowski v. Rush Sys. for Health*,
2023 WL 4707184 (N.D. Ill. July 24, 2023).........................................................9

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......................................................................................14

*Kylie S. v. Pearson PLC*,
475 F. Supp. 3d 841 (N.D. Ill. 2020) ..............................................................8, 10

*Legg v. Leaders Life Ins. Co.*,
574 F. Supp. 3d 985 (W.D. Okla. 2021) .............................................................4, 6

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) ..............................................................................12

*Loop Spine & Sports Ctr., Ltd. v. Am. College of Med. Quality, Inc.*,
2023 WL 3585835 (N.D. Ill. May 22, 2023). ......................................................12

*Maag v. U.S. Bank, Natl. Assn.*,
2021 WL 5605278 (S.D. Cal. Apr. 8, 2021).........................................................18

*MBD Ents., Inc. v. Am. Nat. Bank of Chicago*,
  655 N.E.2d 1061 (Ill. App. 1995) .......................................................................23

*McCombs v. Delta Grp. Elecs., Inc.*,
  2023 WL 3934666 (D.N.M. June 9, 2023) ........................................................5, 8

*Miami Prods. & Chem. Co. v. Olin Corp.*,
  546 F. Supp. 3d 223 (W.D.N.Y. 2021) ................................................................11

*Michaels Stores Pin Pad Litig.*,
  830 F. Supp. 2d 518 (N.D. Ill. 2011) .............................................................20, 21

*Mirfasihi v. Fleet Mortg. Corp.*,
  2007 WL 2066503 (N.D. Ill. July 17, 2007).........................................................9

*Narkiewicz-Laine v. AER Lingus Group PLC*,
  2013 WL 1461789 (Ill. App. Apr. 10, 2013) .......................................................19

*Pegasus Trucking, LLC v. Asset Redeployment Grp., Inc.*,
  2021 WL 1234879 (C.D. Cal. Feb. 16, 2021)......................................................21

*Perdue v. Hy-Vee, Inc.*,
  455 F. Supp. 3d 749 (C.D. Ill. 2020) ...................................................12, 20, 23

*Perkins v. WellDyneRx, LLC*,
  2023 WL 2610157 (M.D. Fla. Mar. 23, 2023) ......................................................6

*Pierre v. Midland Credit Mgt., Inc.*,
  29 F.4th 934 (7th Cir. 2022) .................................................................................4

*Podroykin v. Am. Armed Forces Mutual Aid Ass'n*,
  634 F. Supp. 3d 265 (E.D.Va. 2022) .....................................................................5

*In re Practicefirst Data Breach Litig.*,
  2022 WL 354544 (W.D.N.Y. Feb. 2, 2022), *adopted*, 2022 WL 3045319
  (W.D.N.Y. Aug. 1, 2022)...................................................................................5, 8

*Pucillo v. Nat'l Credit Sys., Inc.*,
  66 F.4th 634 (7th Cir. 2023) ..............................................................................7, 8

*Razuki v. Caliber Home Loans, Inc.*,
  2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .....................................................15

*Rivers v. Southway Carriers, Inc.*,
  2023 WL 5348809 (N.D. Ill. Aug. 20, 2023) ......................................................11

*Roehrborn v. Lambert*,
  660 N.E.2d 180 (Ill. App. 1995) ...........................................................................9

*Roper v. Rise Interactive Media & Analytics, LLC*,
  2023 WL 7410641 (N.D. Ill. Nov. 9, 2023) ............................................6, 9, 20, 22

*Rowe v. Bankers Life and Cas. Co.*,
  2013 WL 1245555 (N.D. Ill. Mar. 26, 2013) ...........................................................14

*Schilling v. Rogers*,
  363 U.S. 666 (1960) ..................................................................................................25

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) ......................................................................................8

*Smith v. NVR, Inc.*,
  2018 WL 6335051 (N.D. Ill. Dec. 5, 2018) .............................................................11

*Soarus, L.L.C. v. Bolson Materials Int'l Corp.*,
  2017 WL 6762239 (N.D. Ill. Dec. 27, 2017) ...........................................................18

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ..................................................................................................10

*Storm v. Paytime, Inc.*,
  90 F. Supp. 3d 359 (M.D. Pa. 2015) ...........................................................................5

*Tate v. EyeMed Vision Care, LLC*,
  2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) ........................................................16

*Taylor v. UKG, Inc.*,
  2023 WL 8291834 (D. Mass. Sept. 15, 2023) ...........................................................6

*Thompson v. Home Depot, Inc.*,
  2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) .........................................................15

*Tracy v. Elekta, Inc.*,
  2023 WL 4677021 (N.D. Ga. Mar. 31, 2023) ..........................................................23

*Trahanas v. Northwestern Univ.*,
  2021 WL 2853374 (N.D. Ill. July 8, 2021) ..............................................................19

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ........................................................................................ *passim*

*Ulrich v. Probalance, Inc.*,
  2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) .......................................................2, 23

*USAA Fed. Savings Bank v. PLS Fin. Servs., Inc.*,
  260 F. Supp. 3d 965 (N.D. Ill. 2017) .......................................................................13

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
  12 F.4th 665 (7th Cir. 2021) ..............................................................................7

*Waste Mgmt. Data Breach Litig.*,
  2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) .....................................................18

*White v. Citywide Title Corp.*,
  2018 WL 5013571 (N.D. Ill. Oct. 16, 2018) .....................................................9

*Wilbourn v. Advantage Fin. Partners, LLC*,
  2010 WL 1194950 (N.D. Ill. 2010) ..................................................................13

*Worix v. MedAssets, Inc.*,
  869 F. Supp. 2d 893 (N.D. Ill. 2012) ...............................................................13

**Statutes**

815 ILCS 505/1(e) ....................................................................................................11

815 ILCS 530/1 *et seq.*.............................................................................................13

815 ILCS 530/10(a)–(b)............................................................................................13

Cal. Civ. Code 1798.140(d) ......................................................................................17

Cal. Civ. Code § 1798.140(a)(i) ...............................................................................16

Cal. Civ. Code § 1798.140(ag) .................................................................................16

Cal. Civ. Code § 1798.140(f) ....................................................................................17

Cal. Civ. Code § 1798.140(j) ....................................................................................16

Cal. Civ. Code § 1798.145 (a)(7)........................................................................15, 16

Cal. Civ. Code § 1798.150........................................................................................16

Cal. Civ. Code § 1798.150(a)(1)...............................................................................15

**Rules**

Fed. R. Civ. P. 12 (b)(6)..............................................................................................2

**Other Authorities**

8A Am. Jur. 2d Bailments § 40..................................................................................24

Restatement 2d of Contracts § 302 ...........................................................................22

## INTRODUCTION

Since the data breach at Bryan Cave Leighton Paisner LLP (BCLP) occurred nearly a year ago, no one claims to have been hurt. Indeed, plaintiffs do not allege their personal information has been misused in any manner. For example, they do not claim that their identities were stolen, that they have been the victims of an attempted fraud, or that they have incurred any monetary expense as a result of the breach.

 Nevertheless, plaintiffs in this putative class action seek money damages from BCLP, a law firm they never hired or interacted with in any manner. Instead, plaintiffs are current or former employees of BCLP's client, Mondelēz International, Inc., which provided BCLP with employee information in connection with legal services BCLP performed for the company. Plaintiffs do not allege they knew of BCLP or the services it was providing.

These two fundamental facts—an absence of injury and lack of any relationship between the parties—defeat all of plaintiffs' myriad counts against BCLP. To begin with, plaintiffs' lack of harm means they do not have standing to sue; nor do they adequately allege they suffered damages, an essential element of their claims. In addition, plaintiffs' statutory consumer-protection claims fail because, among other things, they do not allege they are consumers of BCLP (or anyone else). Their negligence claims fail because the Seventh Circuit has held there is no common-law duty to protect personal information—much less on the part of a defendant with whom plaintiffs have no relationship. Their contract claim fails because they do not allege facts showing they are the intended beneficiaries of any agreement. And their unjust-enrichment and bailment claims fail because they do not allege they conferred a benefit on or delivered property to BCLP.

## STATEMENT OF ALLEGED FACTS

This putative class action arises from a February 2023 data-security incident in which criminals accessed client files in BCLP's possession. Mondelēz was one of the clients whose files

were implicated. (ECF No. 34, Consolidated Compl. ¶¶ 24, 33.) Plaintiffs Eric Flores and Rock Meyer are or were employees of Mondelēz but have no relationship with BCLP whatsoever. (*Id.* ¶ 24.) Mondelēz gave BCLP personally identifiable information (PII) relating to current and former employees to obtain "advice on customary legal matter[s] of a company of its size[.]" (*Id.* n.16) Plaintiffs claim that PII relating to them was compromised and that Mondelēz notified them of this by letter in June 2023. (*Id.* ¶ 42, Exs. 1–2.)

Five other current or former employees have sued Mondelēz concerning the same data-security incident in a separate consolidated action pending before this Court. (*See In re Mondelēz Data Breach Litigation*, No. 1:23-CV-03999, ECF No. 24, Consolidated Compl.)

None of the plaintiffs in these matters—neither the two in this case nor the five in the case against Mondelēz—allege that they have suffered a cognizable injury or have had any interaction or relationship with BCLP.

## LEGAL STANDARD

BCLP challenges the complaint on two fronts. Fed. R. Civ. P. 12(b)(1) tests whether plaintiffs allege enough facts to establish standing to sue under Article III. *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at \*2 (N.D. Ill. Aug. 18, 2017) (Alonso, J.). And Fed. R. Civ. P. 12 (b)(6) assesses whether the complaint provides enough facts "to state a claim to relief that is plausible on its face." *Id.* Under both rules, "courts should evaluate the sufficiency of the allegations by using *Twombly–Iqbal*'s 'plausibility' requirement[.]" *Id.* at \*2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.") (cleaned up) (quotation omitted)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (similar).

## LAW AND ARGUMENT

I. **PLAINTIFFS DO NOT ALLEGE A CONCRETE HARM AND THUS LACK STANDING.**

### A. Risk of Future Harm Is Not an Article III Injury.

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

Plaintiffs' primary argument is not that identity fraud has actually occurred, but rather that they face a "substantially increased risk of fraud, identity theft, and misuse" in the future. (Compl. ¶¶ 71, 80.) But *TransUnion* did away with the notion that a mere risk of prospective harm can support Article III standing to sue for damages. The plaintiffs in that case were a class of individuals whom TransUnion had erroneously flagged as "potential terrorists, drug traffickers, or serious criminals." 594 U.S. at 432. TransUnion provided the credit files of some of those class members to third-party businesses, and the Court held those individuals suffered concrete harm by "being labeled a 'potential terrorist'" in materials published to third parties. 594 U.S. at 432–33.

But the files of the other class members were not published during the class period—and those individuals did *not* have standing to sue. *Id.* at 439. The Court held that "the misleading information in the internal credit files itself" did not "constitute[] a concrete harm." *Id.* at 414–15. And the alleged risk of future harm was "too speculative" to confer standing because "plaintiffs did not demonstrate a sufficient likelihood that their individual credit information would be requested by third-party businesses and provided by TransUnion during the relevant time period." *Id.* at 438. In short, those plaintiffs lacked standing because they "did not demonstrate that the risk of future harm materialized." *Id.* at 415.

Following *TransUnion*, the Seventh Circuit has confirmed that "[a] plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized." *Pierre*

*v. Midland Credit Mgt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022); *see also Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022) ("*TransUnion* makes clear that a risk of future harm, without more, is insufficiently concrete to permit standing to sue for damages in federal court.").

This principle applies with equal force in the data-breach arena. *See, e.g.*, *Kim v. McDonald's USA, LLC*, 2022 WL 4482826, at *3–4 (N.D. Ill. Sept. 27, 2022) (no standing where "none of the Plaintiffs have alleged that they, in fact, fell victim to a phishing scam or otherwise had their identities stolen"; theories of potential future harm that "rel[y] on a highly attenuated chain of possibilities" or "speculation about the decisions of independent actors" are not enough) (citation omitted); *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 994 (W.D. Okla. 2021) ("[I]dentity theft or fraud will only occur if unknown third parties undertake a series of acts, including the comprehension and organization of the stolen data, the posting of the data for sale, the consummation of a transaction, and then the actual use of the data to make unauthorized purchases or open fraudulent accounts. A future risk of injury that relies on this sort of speculation about the decisions of independent actors is not sufficient to establish a concrete injury.").

Plaintiffs here do not (and cannot) claim to be harmed merely because information about them was hacked—the harm they claim is that the hacker might use the information to steal their identity in the future or sell it to others who might do so. But plaintiffs offer zero facts to suggest any such harm is truly imminent or substantially likely to occur. Plaintiffs thus have not met the Article III requirements for injunctive relief much less damages. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (standing to seek injunction requires "concrete, particularized, and . . . imminent" injury that "is *certainly* impending"); *see also TransUnion*, 594 U.S. at 435 (limiting *Clapper*'s standard to "suit[s] for *injunctive* relief"); *Florence v. Order Express, Inc.*, 2023 WL 3602248, at *4 (N.D. Ill. May 23, 2023) ("a substantial risk of future harm can support standing

4

only for forward-looking, injunctive relief to prevent the harm from occurring," while "[p]ursuing damages [] requires a concrete harm that has already materialized") (quotation omitted).

Indeed, we are now nearly a year out from the date of the data breach, and what plaintiffs do *not* allege speaks volumes. Plaintiffs do not claim they have experienced any actual or attempted misuse of their information. Their identities have not been stolen, their information has not appeared on the dark web, and their financial accounts have not been subjected to any unauthorized access. The same is true for each of the five additional employees who sued Mondelēz. (*See* Mondelēz Compl. ¶¶ 126–165.) Indeed, plaintiffs do not allege that *anyone* whose information was allegedly accessed has suffered actual identity fraud.

Critically—and as many courts have held—the passage of so much time dispels any likelihood that future harm will befall a data-breach plaintiff. *See Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017) (dismissing claims for lack of standing; "as the breaches fade further into the past, the Plaintiffs' threatened injuries become more and more speculative") (quotation omitted); *Podroykin v. Am. Armed Forces Mutual Aid Ass'n*, 634 F. Supp. 3d 265, 271 (E.D. Va. 2022) (refusing to speculate "that the evil actor has been lying in wait, for over 16 months, to steal plaintiff's identity or otherwise misuse the PII"); *Storm v. Paytime, Inc.*, 90 F. Supp. 3d 359, 366–67 (M.D. Pa. 2015) ("[T]he data breach in this case occurred in April 2014—almost a year ago— and Plaintiffs have yet to allege that any of them have become actual victims of identity theft."); *McCombs v. Delta Grp. Elecs., Inc.*, 2023 WL 3934666, at *5 (D.N.M. June 9, 2023) ("[O]ver a year has passed since the data breach and McCombs fails to allege that any of the compromised PII—whether hers or that of the proposed class—has been misused."); *In re Practicefirst Data Breach Litig.*, 2022 WL 354544, at *5 (W.D.N.Y. Feb. 2, 2022) ("[O]ver a year has passed since the data breach and there is no indication that plaintiffs, or any of the other potential class members

for that matter, have had their identities stolen."), *adopted*, 2022 WL 3045319 (W.D.N.Y. Aug. 1, 2022); *Duqum v. Scottrade, Inc.*, 2016 WL 3683001, at \*4 (E.D. Mo. July 12, 2016) ("[M]ore than two years have passed since the original data breach without a single alleged instance of identity theft or fraud involving any of Defendant's customers."), *aff'd sub nom., Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017).[1]

This rule does not unfairly impinge the rights of would-be plaintiffs. As the Supreme Court explained in *TransUnion*, "time will eventually reveal whether the risk materializes in the form of actual harm." 594 U.S. at 436. If the "risk of future harm materializes and the individual suffers a concrete harm, then the harm itself . . . will constitute a basis for the person's injury and for damages"—but "[i]f the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing." *Id.*

The bottom line is clear: though a data breach occurred, neither plaintiffs nor anyone else has experienced misuse of their data and plaintiffs therefore lack standing to sue.

### B.    Plaintiffs' Other Alleged Harms Are Not Article III Injuries Either.

Even if plaintiffs had adequately alleged an imminent risk of future harm, *TransUnion* would still require that the increased risk cause "a separate concrete harm." 594 U.S. at 436. Plaintiffs throw a litany of other proposed harms against the wall; none of them stick.

---

[1] While some post-*TransUnion* decisions have found a sufficient risk of future harm to support standing where the breached data was "sensitive," those cases did not involve a protracted period of time in which no misuse had occurred. In fact, in two of those cases, the plaintiffs had *already* experienced actual misuse of their PII. *See Roper v. Rise Interactive Media & Analytics, LLC*, 2023 WL 7410641, at \*4 (N.D. Ill. Nov. 9, 2023) ("[H]ackers have already allegedly used Plaintiff Roper's diagnosis to fraudulently fill a prescription."); *Florence*, 2023 WL 3602248, at \*1 ("Due to the breach, six gigabytes of customer data appeared for sale on the 'dark web.'"). And many other cases hold that the risk of future harm is not enough to support standing even where information such as social-security numbers are involved. *E.g.*, *Perkins v. WellDyneRx, LLC*, 2023 WL 2610157, at \*2–3 (M.D. Fla. Mar. 23, 2023); *Taylor v. UKG, Inc.*, 2023 WL 8291834, at \*6 (D. Mass. Sept. 15, 2023); *Legg*, 574 F. Supp. 3d at 993.

<u>Time spent</u>. Plaintiffs claim they spent time "dealing with the consequences of the Data Breach." (Compl. ¶¶ 66, 76.) But plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416; *see also Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 978 (7th Cir. 2023) ("Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid is not certainly impending.").

<u>Emotional distress</u>. Without providing details, plaintiffs allege they "experience[d] feelings of anxiety, sleep disruption, stress, fear, and frustration." (Compl. ¶¶ 67, 77.) But the Seventh Circuit has rejected standing based on such "quintessential abstract harms that are beyond [the court's] power to remedy." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F. 4th 665, 668 (7th Cir. 2021) (lost sleep, anxiety, mental anguish, stress, and annoyance insufficient); *see also Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 637 (7th Cir. 2023) (stress, concern, and fear insufficient); *Choice v. Kohn Law Firm, S.C.*, 77 F. 4th 636, 640 (7th Cir. 2023) (lost sleep is "insufficient to show a concrete harm"). As the Court has explained, if standing could be based on such allegations then "almost everyone could litigate about almost anything." *Baysal*, 78 F.4th at 977.

<u>Increased spam</u>. Plaintiff Meyers alleges he has seen "an influx of spam calls and emails." (Compl. ¶ 68.) But courts have consistently ruled that "'receiving spam or mass mail does not constitute an injury in fact." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1051 (N.D. Cal. 2022) (collecting cases); *accord In re Illuminate Educ. Data Sec. Incident Litig.*, 2023 WL 3158954, at *3 (C.D. Cal. April 19, 2023); *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022); *Blood v. Labette Cnty. Med. Ctr.*, 2022 WL 11745549, at *6 (D. Kan. Oct. 20, 2022); *Practicefirst*, 2022 WL 354544, at *5 n.8.

Moreover, any "influx" cannot be traced to BCLP because the data that allegedly was breached did not include phone numbers or email addresses. (Compl. ¶ 6.) *See McCombs*, 2023 WL 3934666, at *6 (no standing based on increased spam because plaintiff "has not provided a nexus between the data breach and the listed unwanted communications" and "[s]he does not allege that her contact information (e.g., phone number, e-mail address) were included in the data breach").

Diminution of value. Plaintiffs also allege they suffered "damages to and diminution in value of" their PII. (Compl. ¶¶ 73, 82). As Judge Posner stated, in affirming the dismissal of a data-breach claim for lack of standing, such allegations are "gibberish." *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 913 (7th Cir. 2017). And even if the law did recognize diminution of value as a potential harm, plaintiffs here offer the conclusion without any facts supporting its plausibility. *See Silha v. ACT, Inc.*, 807 F.3d 169, 172 (7th Cir. 2015) (affirming dismissal for lack of standing; "Plaintiffs failed to allege that they have the ability to sell their personal information or that Defendants' conduct foreclosed them from entering into a 'value for value transaction' relating to their PII."); *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 849 (N.D. Ill. 2020) (rejecting theory because plaintiffs did not plead they sold their data or would consider doing so).

Invasion of privacy. Plaintiffs' claim of "extreme invasion of privacy" is also insufficient to establish standing. (Compl. ¶¶ 70, 79.) "Invasion of privacy" is not itself a concrete injury—it is a tort that "encompasse[s] four theories of wrongdoing: intrusion upon seclusion, appropriation of a person's name or likeness, publicity given to private life, and publicity placing a person in a false light." *Pucillo*, 66 F.4th at 639–40. To establish standing, plaintiffs' alleged injuries must "bear a close relationship" to one of those four theories. *Id.* (citing *TransUnion,* 594 U.S. at 432–33). A "close relationship" must satisfy the "essential" or "key" elements of the common-law

analogue. *See, e.g.*, *Ciccone v. Cavalry Portfolio Servs., LLC*, 2021 WL 5591725, at *4 (E.D.N.Y. Nov. 29, 2021) (citing *TransUnion*, 594 U.S. at 434).

None of these theories apply here. An "intrusion upon seclusion" requires intentional conduct by the defendant; BCLP did not act intentionally but was the victim of a criminal data breach. *See White v. Citywide Title Corp.*, 2018 WL 5013571, at *3 (N.D. Ill. Oct. 16, 2018) (dismissing data-breach intrusion claim because "[n]othing in plaintiff's complaint allows the court to reasonably infer that [defendant] intentionally shared his information with third parties"); *Roper*, 2023 WL 7410641, at *8 ("[I]t was the hackers, not Defendant, who made the unauthorized intrusion."). Plaintiffs do not allege that BCLP appropriated their name or likeness or that the firm placed them in a "false light." *Mirfasihi v. Fleet Mortg. Corp.*, 2007 WL 2066503, at *6 (N.D. Ill. July 17, 2007) (dismissing appropriation claim where defendant "did not purport to use any of plaintiffs' names or likeness to endorse its product"); *Kapotas v. Better Gov't Ass'n*, 30 N.E. 3d 572, 595 (Ill. App. 2015) (dismissing false-light claim for failure to identify published false statement). Nor do they allege "publicity given to private life," which requires "communicating the matter to the public at large" or facts showing the "plaintiff has a special relationship with the 'public' to whom the information was disclosed." *Roehrborn v. Lambert*, 660 N.E.2d 180, 182 (Ill. App. 1995); *see also Karraker v. Rent-A-Ctr., Inc.*, 411 F.3d 831, 838 (7th Cir. 2005) (affirming dismissal because information was not publicized); *Kurowski v. Rush Sys. for Health*, 2023 WL 4707184, at *9 (N.D. Ill. July 24, 2023) (dismissing claim because information was not publicized).

Benefit of bargain. Finally, plaintiffs allege they suffered a "loss of the benefit of the bargain with [BCLP] to provide adequate and reasonable data security," which they calculate as the "difference in value" between BCLP's "performance" and what they "should have received."

9

(Compl. ¶¶ 73, 82.) This theory, dubious in any data-breach context, makes *no* sense here: Plaintiffs never had any bargain with BCLP and never paid the firm anything, much less overpaid. *See Kylie*, 475 F. Supp. 3d at 846 n.3 (benefit-of-bargain theory inapplicable where "[p]laintiffs never paid for [defendant's services]" and thus could not show "products they received were worth less than the products they were promised").[2]

## II. EVEN APART FROM LACK OF STANDING, PLAINTIFFS' STATUTORY CLAIMS FAIL.

### A. Plaintiffs Do Not Have a Valid Claim under ICFA (Count IV).

Plaintiffs claim BCLP violated Illinois's Consumer Fraud and Deceptive Business Practices Act (ICFA) by engaging in unfair and deceptive practices. (Compl. ¶ 140.) Plaintiffs also claim that BCLP violated ICFA by failing to comply with the notice requirements of Illinois's Personal Information Protection Act (PIPA), which is incorporated into ICFA. (*Id.* ¶ 144.) Both claims fail as a matter of law under Rule 12(b)(6).

#### 1. ALL THE ICFA CLAIMS FAIL FOR MULTIPLE REASONS.

Plaintiffs do not have a valid claim under ICFA, whether for alleged unfair and deceptive practices or violation of PIPA. Plaintiffs do not claim to have purchased anything from BCLP (or, for that matter, Mondelēz) or relied upon any BCLP advertising. They are employees, not consumers; they were not deceived by anything BCLP represented; they did not suffer a monetary loss; they do not describe any pertinent transaction that took place in Illinois; and the only thing they allege was purchased were the legal services Mondelēz bought from BCLP, which fall outside

---

[2] Plaintiffs' complaint also lists injuries the putative class members supposedly have "suffered or are at an increased risk of suffering." (Compl. ¶ 84.) But "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016); *see also Garner v. Buzz Finco LLC*, 2022 WL 1085210, at *4 (N.D. Ill. Apr. 11, 2022) ("Standing cannot be acquired through the back door of a class action. . . . [A] person cannot predicate standing on [an] injury which he does not share.").

ICFA's ambit.

Not consumers. As its name suggests, ICFA protects consumers, not employees. A "consumer" is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). Plaintiffs declare themselves "consumers" (Compl. ¶ 138), but do not allege BCLP (or even Mondelēz) sold them anything. Accordingly, ICFA simply does not apply here. *See Hess v. Kanski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012) (rejecting ICFA claim where plaintiff "was an employee, not a 'consumer'"); *Rivers v. Southway Carriers, Inc.*, 2023 WL 5348809, at *3 (N.D. Ill. Aug. 20, 2023) ("[A] person harmed in his capacity as a supplier of labor, which is what is alleged here, is not a 'consumer' under the statute."); *Harris v. JAT Trucking of Illinois, Inc.*, 2009 WL 2222740, at *9 (C.D. Ill. July 24, 2009) (dismissing employee's claims).

No deception or unfairness. ICFA requires that the alleged deceptive statement be made "with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage." *Smith v. NVR, Inc.*, 2018 WL 6335051, at *4 (N.D. Ill. Dec. 5, 2018). Plaintiffs here do not allege they saw or relied on the supposedly deceptive statements made by BCLP on its website or even that they knew what BCLP was or what services it provided. Indeed, being unaware of BCLP, they would have had no reason to take notice of any such statements. Plaintiffs' deceptive-practices claim fails for this reason as well. *See id.* (plaintiffs' claim that they were indirectly deceived by misrepresentations developer made to city failed because they did not allege they "became aware" of misrepresentations "*before* they agreed to buy their home" and thus could not have relied on them); *Miami Prods. & Chem. Co. v. Olin Corp.*, 546 F. Supp. 3d 223, 239 (W.D.N.Y. 2021) (dismissing ICFA claim because plaintiffs could

not prove they "purchased a product *as a result* of the [defendant's] deception of another").

To the extent plaintiffs also assert an unfair act or practice, their claim falls woefully short. An unfair practice under ICFA is one that "offends public policy" or is "immoral, unethical, oppressive, or unscrupulous." *Loop Spine & Sports Ctr., Ltd. v. Am. College of Med. Quality, Inc.*, 2023 WL 3585835, at *2 (N.D. Ill. May 22, 2023). Plaintiffs describe no such conduct by BCLP.

No monetary damages. ICFA also requires allegations and proof of monetary damage. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) ("[T]he statute requires 'actual damages' before a private litigant can bring suit."); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) ("The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'"). Plaintiffs here allege no monetary loss, so their ICFA claim also fails on this ground. *Archey v. Osmose Utilities Servs., Inc.*, 2021 WL 3367156, at *4 (N.D. Ill. Aug. 3, 2021) (dismissing ICFA data-breach claim because allegations of risk of future misuse and value of time spent responding to the incident did not amount to actual damages).

Lack of Illinois nexus. Plaintiffs' ICFA claim also fails because they do not allege that "the circumstances that relate to the disputed transaction occur[ed] primarily and substantially in Illinois." *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853 (Ill. 2005)). In the data-breach context, the "transaction" occurs where the plaintiff interacted with defendant. *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 774 (C.D. Ill. 2020) (even Illinois resident could not bring ICFA claim where "disputed transaction occurred in Kansas, not Illinois"). Plaintiffs in this case are not Illinois residents and did not interact with BCLP in Illinois or anywhere else. Indeed, plaintiffs have not only failed to show that the "disputed transaction" occurred primarily in Illinois—they have failed to describe any transaction at all.

No application to practice of law. ICFA does not "apply to the conduct of attorneys in relation to their clients." *Cripe v. Leiter*, 703 N.E.2d 100, 105–06 (Ill. 1998); *see also Wilbourn v. Advantage Fin. Partners, LLC*, 2010 WL 1194950, at *12 (N.D. Ill. Mar. 22, 2010) ("[W]here allegations of misconduct arise from a defendant's conduct in his or her capacity as an attorney representing a client, [ICFA] does not apply.") (collecting cases). Plaintiffs acknowledge their claim arises from BCLP's representation of a client. (Compl. ¶ 24 (alleging that "Plaintiffs' and the Class's PII was acquired by BCLP through BCLP's relationship with one of BCLP's clients, Mondelez International").) Accordingly, ICFA does not apply here as a matter of law.

### 2. Plaintiffs' PIPA-Based ICFA Claim Fails for Additional Reasons.

Plaintiffs' claim that BCLP violated PIPA "by failing to immediately notify Plaintiffs and the Class of the nature and extent of the Data Breach" is brought under ICFA (Compl. ¶ 144), and thus fails for the reasons set forth above. But plaintiffs' PIPA-based ICFA claim also fails for two additional, independent reasons as well.

Not Illinois residents. First, only Illinois residents have standing to assert a violation of PIPA. *See* 815 ILCS 530/1 *et seq.*; *see also Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1069 (C.D. Ill. 2016) (non-Illinois resident had no standing to bring PIPA claim); *USAA Fed. Savings Bank v. PLS Fin. Servs., Inc.*, 260 F. Supp. 3d 965, 971–72 (N.D. Ill. 2017) (same). Since plaintiffs live in Kentucky and California (Compl. ¶¶ 14, 15), PIPA does not apply to them.

No duty to notify. Second, PIPA would not require BCLP to provide notice to plaintiffs in any event. As plaintiffs allege, BCLP maintained information it received from Mondelēz. (*Id.* ¶ 25.) PIPA provides that a data collector that "maintains" computerized data shall notify "the owner or licensee of the information" of a data breach—and then the owner of "information concerning an Illinois resident shall notify the resident." 815 ILCS 530/10(a)–(b). That is exactly what happened here: BCLP provided notice to Mondelēz as the data "owner," and then Mondelēz

notified its affected employees. (*See* Compl., Ex. 1 at 1, Ex. 2 at 1.) *See Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 898 (N.D. Ill. 2012) (third-party company that handled patient PII for hospitals had no duty to notify individual patients of company's data breach); *Irwin*, 175 F. Supp. 3d at 1069 (customer affected in data breach was not "owner" of electronic data containing her PII and was thus not entitled to notice of a breach under PIPA).

### B. PLAINTIFF FLORES DOES NOT STATE A CLAIM UNDER THE UCL (COUNT V).

Plaintiff Flores' claims under California's Unfair Competition Law (UCL) fail too. To begin with, similar to ICFA, the UCL protects consumers and competitors, not employees. *De Martinez v. CRST Expedited, Inc.*, 2023 WL 4247701, at *13 (C.D. Cal. May 10, 2023) (UCL's "'purpose is to protect both *consumers* and *competitors* by promoting fair competition in commercial markets for goods and services'") (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011)). Flores is not suing as a consumer or competitor, but only as an employee of a BCLP client. *De Martinez*, 2023 WL 4247701, at *13 ("Plaintiffs are neither consumers nor competitors of Defendant and they have not identified how any unfair business practice has caused them to suffer an economic injury.").

Flores also fails the UCL's "restrictive 'standing' requirement," which requires a plaintiff to "establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., *economic injury*." *Rowe v. Bankers Life and Cas. Co.*, 2013 WL 1245555, at *7 (N.D. Ill. Mar. 26, 2013) (citing *Kwikset*, 51 Cal. 4th at 322, 324). Flores's UCL claim "necessarily fails because personal information is not 'property' for purposes of the UCL." *In re Clearview AI, Inc. Consumer Privacy Litig.*, 585 F. Supp. 3d 1111, 1128 (N.D. Ill. 2022); *see also In re iPhone Application Litig.*, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) ("Numerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL.").

Flores's other alleged harms fall short as well. *See Gardiner v. Walmart Inc.*, 2021 WL

2520103, at *4 (N.D. Cal. Mar. 5, 2021) ("Plaintiff's conclusory allegations of an increased risk of identity theft are insufficient to establish injury as required for his negligence, contract, and UCL claims."); *id.* at *4 ("[A]llegations of the lost value of his PII are insufficient."); *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018) ("[Plaintiff's] claim alleging diminution of value of his personal data fails to allege enough facts to establish how his personal information is less valuable as a result of the breach."); *Benham v. First Am. Home Buyers Protection Corp.*, 2015 WL 5098068, at *11 (Cal. App. Aug. 31, 2015) ("Emotional distress damages do not satisfy the requirement that she suffered a loss of money or property.").

Flores asserts, without alleging any facts in support, that he "lost money and property as a result of Defendant's conduct in violation of the UCL[.]" (Compl. ¶ 160.) But courts are "not required to credit [such] conclusory legal allegations." *See Thompson v. Home Depot, Inc.*, 2007 WL 2746603, at *2 (S.D. Cal. Sept. 18, 2007); *see also Hosseini v. Wells Fargo Bank, N.A.*, 2013 WL 4279632, at *8 (N.D. Cal. Aug. 9, 2013) (rejecting "conclusory allegation that [plaintiffs] 'were injured in fact and lost money or property as a result' of Defendant's 'practices'").

## C. PLAINTIFF FLORES FAILS TO STATE A CCPA CLAIM (COUNT VI).

Plaintiff Flores alleges that BCLP violated the California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100, *et seq.* (CCPA). This claim fails for three reasons.

### 1. This Case Is Subject to the CCPA's "Outside of California" Exemption.

To state a CCPA claim, a plaintiff must allege that a data breach was "a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information[.]" Cal. Civ. Code § 1798.150(a)(1). However, conduct that "takes place wholly outside of California" is exempt from the CCPA. Cal. Civ. Code § 1798.145 (a)(7). This exemption applies if: (1) the business collected the consumer's information while he was outside of California; (2) no part of any sale of the information occurred

in California; and (3) the business did not sell personal information about the consumer that was collected when the individual was in California. *Id.*

Plaintiff Flores claims that BCLP is a "business" and that he is a "consumer" (Compl. ¶¶ 166–67), but does not plead any facts showing a California nexus. He does not contend there was any "sale" of information pertaining to him in California (or anywhere else). Nor does he allege when, where, or how any alleged "collection" of his information occurred, much less that he was in California when it happened. Indeed, it is impossible from the face of the Complaint to determine whether any of the relevant conduct underlying Flores's CCPA claim took place in California. *See Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467, at *10 (S.D. Ohio Sept. 29, 2023) (dismissing CCPA claim where plaintiff failed to plead facts showing medical-information exemption under Section 1798.145 was inapplicable).

In short, plaintiff Flores does not establish the California nexus required by the CCPA, and his claim should therefore be dismissed.

### 2. The CCPA Does Not Apply to BCLP as a "Third Party."

Plaintiff also has not shown he is entitled to bring a CCPA claim against BCLP to begin with. A private right of action under the CCPA may be brought only against a "business," not a "third party." Cal. Civ. Code § 1798.150. The statute carefully distinguishes between the two: indeed, a "third party" is specifically defined *not* to be "[t]he business with whom the consumer intentionally interacts and that collects personal information from the consumer as part of the consumer's current interaction with the business." Cal. Civ. Code 1798.140(ai).[3] Plaintiffs do not allege BCLP collected information from them or that they interacted with BCLP at all. Instead,

---

[3] A "third party" may not be a "service provider" or "contractor." Cal. Civ. Code § 1798.140(ai). BCLP is not alleged to be either one, as both terms require specific contractual provisions with a "business," which are not alleged to exist here. *Id.* § 1798.140(ag), (j)(1).

they say their employer gave the information to BCLP. (Compl. ¶ 24.) Thus, BCLP is a "third party" and not within the ambit of a private right of action under the CCPA.

It is true that "business" is broadly defined as an entity that collects consumer information. Cal. Civ. Code 1798.140(d). And "collect" is defined to mean "buying, renting, gathering, obtaining, receiving, or accessing any personal information pertaining to a consumer by any means." Cal. Civ. Code § 1798.140(f). But "by any *means*" does not mean "from any *person*"—indeed, the statutory definition goes on to state that "collect" includes "receiving information *from the consumer*, either actively or passively, or by observing the consumer's behavior." *Id.* (emphasis added). Thus, while a business may collect information in any manner, the statute's focus remains on the collection of information *from* the consumer. *See Karter v. Epiq Sys., Inc.*, 2021 WL 4353274, at *2 (C.D. Cal. July 16, 2021) ("Plaintiff alleges that . . . Epiq collects consumers' personal information from consumers. This is an activity for a business, not a service provider, which receives personal information from the business.").

BCLP is unaware of any CCPA cases applying the statute to a third party that did not obtain personal information directly from the consumer. Indeed, the out-of-state exemption discussed above, which exempts "collect[ion of] the consumer's personal information while he was outside of California," further supports the conclusion that the CCPA applies only to the collection of information directly from the consumer—it would be of little moment where the consumer happened to be if his information was collected from someone else.

### 3. Plaintiff's Allegations Are Wholly Conclusory.

Finally, plaintiff Flores does not meet the basic pleading requirement of alleging a CCPA violation. Instead, he simply alleges BCLP violated the statute because a data breach occurred. (Compl. ¶¶ 44, 169, 171.)

No data-security measures are infallible, and the mere fact that BCLP suffered a data

breach does not mean it violated the statute. *See Maag v. U.S. Bank, Natl. Assn.*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) ("[C]onclusory allegations are alone insufficient to state a CCPA claim."); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 57 (D. Ariz. 2021) ("Ranson relies on the same conclusory allegations found elsewhere in the Amended Complaint. That is, because there was a breach, Magellan's data security was inadequate. This argument is insufficient to survive Magellan's motion to dismiss."); *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *6–7 (S.D.N.Y. Feb. 24, 2022) (dismissing CCPA claim based on similar conclusory allegations). Plaintiffs' allegations thus fall short of the mark.

## III. PLAINTIFFS' COMMON-LAW CLAIMS FAIL TOO.

Plaintiffs assert five common-law counts: negligence and negligence *per se*, unjust enrichment, breach of contract, and bailment. None of them state a claim as a matter of law.[4]

### A. Plaintiffs' Common-Law Claims All Fail for Lack of Damages.

As a general matter, plaintiffs must allege facts showing they have suffered actionable damages, which are an essential element of plaintiffs' common-law claims. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law."); *Cowper v. Nyberg*, 28 N.E.3d 768, 772 (Ill. 2015) (reciting injury as element of negligence claim); *Soarus, L.L.C. v. Bolson Materials Int'l Corp.*, 2017 WL 6762239, at *4 (N.D. Ill. Dec. 27, 2017) (damages are required under unjust enrichment and contract claims); *Ashlaur Constr. Co. v. Levy Co.*, 2023 WL 3720863, at *5 (Ill. App. May 30, 2023) (damages required for breach of third-party contract); *Narkiewicz-Laine v. AER Lingus Group PLC*, 2013 WL 1461789, at *3 (Ill. App. Apr. 10, 2013) (proof of damages required for

---

[4] Plaintiffs do not allege sufficient facts to allow for a meaningful choice-of-law analysis at the pleading stage. For the purposes of this motion, BCLP focuses on Illinois law, given that plaintiffs have asserted an Illinois statutory claim on behalf of a nationwide putative class.

bailment claim). "[T]he standard for alleging actual damages is generally higher than that for plausibly alleging an injury-in-fact." *Attias v. CareFirst, Inc.*, 365 F. Supp. 3d 1, 13 (D.D.C. 2019); *see also Doe v. Chao*, 540 U.S. 614, 624–25 (2004) (explaining that plaintiff may suffer Article III injury and yet fail to adequately allege damages).

As demonstrated above, plaintiffs have not even alleged an injury-in-fact. Their failure to "demonstrate[] that [they] suffered a concrete injury sufficient to provide standing necessarily means that [they have] also failed to state a claim for relief on the merits." *Trahanas v. Northwestern Univ.*, 2021 WL 2853374, at *2 (N.D. Ill. July 8, 2021).

### B. Plaintiffs Do Not State a Claim for Negligence (Count I).

To state a claim for negligence, a plaintiff must allege facts showing: (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) plaintiff was injured; and (4) the breach was the proximate cause of plaintiff's injury. *Cowper*, 28 N.E.3d at 772.

#### 1. Illinois Does Not Recognize a Common-Law Duty To Protect Information.

Plaintiffs' negligence claim fails the first element: there is no common-law duty in Illinois to safeguard personal information. In *Cooney v. Chicago Public Schools*, 943 N.E.2d 23 (Ill. App. 2010), the court rejected plaintiffs' invitation to "recognize a 'new common law duty' to safeguard information" notwithstanding "the sensitive nature of personal data such as dates of birth and social security numbers." *Id.* at 28–29.

The Seventh Circuit confirmed there is no common-law duty to protect information under Illinois law in *Community Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 816 (7th Cir. 2018). There the Court held: "[*Cooney*] reads as a more general statement that no duty to safeguard personal information existed, regardless of the kind of loss. . . . [W]e predict that the state court would not impose the common law data security duty the plaintiff banks call for here." *Id.*; *see*

*also Perdue*, 455 F. Supp. 3d at 760 (following *Community Bank* and dismissing Illinois negligence claim for lack of duty to safeguard PII).

Plaintiffs may argue that the Court should depart from *Cooney* and *Community Bank* because the Illinois legislature amended PIPA in 2017 to require reasonable security. But even if PIPA were the template for a proposed duty at common law, it would not save plaintiffs' negligence claim here, as that statute protects only Illinois residents. *See Roper v. Rise Interactive Media & Analytics, LLC*, 2023 WL 7410641, at *6 (N.D. Ill. Nov. 9, 2023) (dismissing Illinois negligence claim in data-breach case because "no common-law duty [to protect PII] exists" and "the protections created in PIPA, and the concomitant duties placed upon data collectors, do not apply" to non-Illinois residents). And in no event should any such duty extend to plaintiffs who are not the ones who provided the PII at issue to BCLP.

### 2. Plaintiffs' Negligence Claim Is Also Barred by the Economic Loss Rule.

Even if plaintiffs' so-called injuries amounted to actionable damages (they do not), the "economic loss rule bars a plaintiff from recovering for purely economic losses under a tort theory of negligence"—instead, plaintiff must plead "personal injury or property damage." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528, 531 (N.D. Ill. 2011) (holding that economic loss doctrine barred negligence claim in data-breach case because plaintiff had not suffered personal injury or property damage); *see also Community Bank*, 887 F.3d at 817 (applying doctrine in data-breach case).

Plaintiffs claim the following "damages"—theft, lost value of their PII, lost benefit of their bargain. and lost time. (Compl. ¶ 111.) "But all of these are economic damages because they reflect a pecuniary loss rather than a personal injury or damage to property." *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 794–95 (W.D. Wis. 2019) (applying Illinois law; holding that lost time, lost value of personal information, violation of privacy rights, and increased risk of harm following data

20

breach are economic losses); *In re Michaels*, 830 F. Supp. 2d at 531 ("[C]ourts dealing with data breach cases have also held that the economic loss doctrine bars the plaintiff's tort claim because the plaintiff has not suffered personal injury or property damage."). Plaintiffs' "emotional distress" allegation also does not enable plaintiffs to escape the economic loss rule. *See Pegasus Trucking, LLC v. Asset Redeployment Grp., Inc.*, 2021 WL 1234879, at *7 (C.D. Cal. Feb. 16, 2021) ("conclusory statement" that plaintiffs suffered emotional distress is "insufficient to allege noneconomic loss"); *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 860 (N.D. Ill. 2022) (emotional injuries are economic losses).[5]

### C.     The FTC Act Does Not Support a Claim of Negligence *Per Se* (Count II).

Plaintiffs allege that BCLP is liable for negligence *per se* because it violated Section 5 of the Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45. (Compl. ¶ 113.) But the "primary purpose" of the FTC Act is to "protect consumers from economic injuries." *Fed. Trade Comm'n v. Trudeau*, 2013 WL 12212736, at *3 (N.D. Ill. Apr. 26, 2013).

Plaintiffs here miss the mark in both respects: they are not consumers and they have not suffered any injuries. *See In re MCG Health Data Security Issue Litig.*, 2023 WL 3057428, at *3 (W.D. Wash. Mar. 27, 2023) (dismissing negligence *per se* claim because "Plaintiffs do not sufficiently allege they are customers nor competitors of MCG Health" and even though "Plaintiffs' health care providers may be customers of MCG Health, [ ] the Complaint does not contain allegations showing Plaintiffs were customers of MCG Health"). Moreover, a negligence

---

[5] There are three exceptions to the economic-loss rule—none of which applies here: (1) for personal injuries or property damage resulting from sudden or dangerous occurrences, (2) for fraud, and (3) for negligent misrepresentations by professional business advisors. *Community Bank*, 887 F.3d at 813. Plaintiffs have not pled personal injury, property damage, or actionable fraud, or that BCLP served as their business advisor. *See id.* (economic loss rule barred tort claims in a data breach case where defendant did not have a professional relationship with plaintiffs).

*per se* claim must be premised on a strict-liability statute, *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999), which the FTC Act is not. *See Community Bank of Trenton v. Schnuck Markets, Inc.*, 210 F. Supp. 3d 1022, 1042 (S.D. Ill. 2016) ("The Plaintiffs have not identified an Illinois statute that has been violated, nor have they met the higher burden of identifying a statute imposing strict liability, as they would be required to do to establish negligence *per se* under Illinois law."); *In re SuperValu, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) (affirming dismissal; "Illinois is unlikely to recognize a legal duty enforceable through a negligence action arising from the FTCA.").

### D. Plaintiffs' Unjust Enrichment Claim Fails Because They Never Provided Anything to BCLP (Count III).

To state a claim for unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

Plaintiffs do not allege they provided anything to BCLP, beneficial or otherwise. But even if they had, and even if the PII here had any monetary value, the "third-party hackers, not Defendants, are the ones who benefitted from the Data Breach." *Roper*, 2023 WL 7410641, at *6 (quotation omitted). The unjust enrichment claim should therefore be dismissed.

### E. Plaintiffs' Allegation That They Are Intended Beneficiaries of a Contract between BCLP and Mondelēz Is Implausible (Count VIII).

Plaintiffs claim to be the "intended beneficiaries" of a contract between Mondelēz and BCLP. (Compl. ¶ 185.) They add, "on information and belief," that this contract required BCLP to protect PII Mondelēz provided for plaintiffs' intended benefit—and that they have the right to enforce that contractual term. (*Id.* ¶¶ 182–190.) These conclusory allegations do nothing more than parrot the elements of the claim, and the Court should dismiss them out of hand.

"Only an intended beneficiary has rights under a third party beneficiary contract. An incidental beneficiary has no rights under a third party beneficiary contract." *MBD Ents., Inc. v. Am. Nat'l Bank of Chicago*, 655 N.E.2d 1061, 1064 (Ill. App. 1995). A beneficiary of a promise is an intended beneficiary only if: (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. Restatement 2d of Contracts, § 302.

Importantly, the contracting parties' intent "must be shown by an express contractual provision that identifies the benefited non-party." *Bob Evans Farms, Inc. v. Excellent Builders, Inc.*, 1988 WL 80137, at *2 (N.D. Ill. July 25, 1988) "[I]t is not enough that the parties know, expect, or even intend that another will benefit if the contract fails to express that intention." *Id.*; *Perdue*, 455 F. Supp. 3d at 765 (holding that "broadly referring to unspecific contracts" is insufficient to state third -party beneficiary claim).

Plaintiffs have not pointed to any contract between Mondelēz and BCLP, let alone language in such a contract that plausibly demonstrates that the contracting parties intended to benefit plaintiffs in any way. Instead, plaintiffs simply guess, "[o]n information and belief," at conclusions that fit their claim. (*See* Compl. ¶¶ 184–85.) That is not enough to meet this Court's plausible-pleading requirement. *See Ulrich*, 2017 WL 3581183, at *2 ("[U]nder the plausibility standard, courts must accept the well-pleaded facts in the complaint as true, but they need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (cleaned up) (quotation omitted); *see also Tracy v. Elekta, Inc.*, 2023 WL 4677021, at *8 (N.D. Ga. Mar. 31, 2023) (dismissing third-party beneficiary claim in data-breach action; "Plaintiffs have done nothing more than state conclusory allegations

that the Northwestern-Elekta contract was entered into for their benefit.").

    **F.    PII Is Not Property That Can Be Delivered, So Plaintiffs' Bailment Claim Fails (Count IX).**

A bailment requires a delivery of property by the plaintiff to the defendant. *Kirby v. Chicago City Bank and Trust Co.*, 403 N.E.2d 720, 723 (Ill. App. 1980). "Delivery, as required for a bailment, necessitates full transfer of property to the bailee so as to exclude the owner and all other persons. … In the absence of some form of delivery of chattel to a bailee's possession, no bailment is created." 8A Am. Jur. 2d Bailments § 40; *see also id.* at § 4 (bailor-bailee relationship "turns on whether there is a relinquishment of exclusive possession, control, and dominion over the property"); *Kirby*, 403 N.E.2d at 723 (bailee acceptance of "exclusive possession" of property is a "necessary element[]" of bailment).

PII is not property that can be delivered for purposes of a bailment claim. Data is a non-rival good—its use by one person does not prevent use by another. *See Gubala*, 846 F.3d 909, 913 (7th Cir. 2017) ("Time Warner did not take the plaintiff's personal information away from him; he still has it (unless he tore up his birth certificate, credit card information, etc.); he hasn't been deprived of anything[.]"). Plaintiffs themselves acknowledge this by alleging their PII was taken by the hacker while also remaining in BCLP's possession. (Compl. ¶¶ 73, 82, 84.) The same would be true for plaintiffs' own possession of whatever information they may have given to Mondelēz.

Indeed, "[n]o court has held that personal information is a chattel that can be bailed." *Bell v. Blizzard Ent., Inc.*, 2013 WL 12132044, at *9 (C.D. Cal. July 11, 2013); *see also Gaddy v. Long & Foster Cos.*, 2022 U.S. Dist. LEXIS 46657, at *29 (D.N.J. Mar. 15, 2022) ("Courts have consistently concluded that PII does not constitute 'property' capable of sustaining a bailment claim in similar data breach actions.") (collecting cases).

24

## IV. PLAINTIFFS' CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF FAIL (COUNT VII).

Plaintiffs bring a claim for injunctive and declaratory relief "under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." (Compl. ¶ 176.) "Declaratory relief 'presupposes the existence of a judicially remediable right' and thus cannot be pursued without a predicate right of action." *Alarm Detection Sys., Inc. v. Orland Fire Protection Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)); *see also City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("The Declaratory Judgment Act is procedural only and presupposes the existence of a judicially remediable right.").

Because each of plaintiffs' substantive claims fail, their claim for injunctive and declaratory relief does as well. *Netflix, Inc.*, 52 F.4th at 878 ("The Declaratory Judgment Act does not provide a cause of action when a party . . . lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief.").

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiffs' complaint.

Dated: January 15, 2024

Respectfully submitted,

*/s/ Daniel R. Warren*
Daniel R. Warren
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, IL 60606
(312) 416-6200
dwarren@bakerlaw.com

Dante A. Marinucci
**BAKER & HOSTETLER LLP**
Key Tower, 127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200
dmarinucci@bakerlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed electronically on January 15, 2024.

Notice of this filing will be sent to all parties registered on this Court's ECF system by operation

of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Daniel R. Warren*
*Counsel for Bryan Cave Leighton Paisner LLP*